197 So.2d 628

**SOUTHERN CONSTRUCTION COMPANY**

v.

**HOUSING AUTHORITY OF the CITY OF OPELOUSAS.**

Nos. 48401, 48402.

March 27, 1967.

Rehearings Denied May 1, 1967.

Andrus & Pavy, H. Garland Pavy, Opelousas, for appellant-applicant.

Andrew Vidrine, Church Point, Daniel J. McGee, Mamou, for appellee-respondent.

Jack P. F. Gremillion, Atty. Gen., Willie D. Maynor, Special Counsel to the Atty. Gen., Malcolm W. Monroe, Deutsch, Kerrigan & Stiles, New Orleans, amicus curiae.

Andrew Vidrine, Church Point, Daniel J. McGee, Mamou, for plaintiff-appellant-appellee-applicant.

Andrus & Pavy, H. Garland Pavy, Opelousas, for defendant-appellant-respondent.

SANDERS, Justice.

Southern Construction Company sued the Housing Authority of the City of Opelousas for the balance due it under a building contract, together with legal interest and court costs. The Housing Authority denied liability, asserting it had withheld $7,160.00 of the contract price as "liquidated damages" for failure to timely complete the work, as stipulated in the contract.

The district court awarded plaintiff judgment for $7,160.00, but denied legal interest and restricted defendant's court cost liability to the stenographer's fee as provided by LSA–R.S. 13:4521. Both parties appealed. The Court of Appeal affirmed. See 189 So.2d 454. On application of both parties, we granted certiorari to review the Court of Appeal judgment. 249 La. 752, 753, 190 So.2d 913.

### Motion to Dismiss Appeal

At the time of oral argument in the Court of Appeal, Southern moved to dismiss Housing Authority's appeal because of its failure to file an appeal bond. This motion stands at the threshold of the case.

When the law requires an appeal bond, no appeal is perfected until the bond has been filed. In the absence of an appeal bond, the jurisdiction of the Court of Appeal never attaches. LSA–C.C.P. Art. 2088; Orrell v. Southern Farm Bureau Casualty Ins. Co., 248 La. 576, 180 So.2d 710. Such an appeal may be formally dismissed, though the appellee's motion is filed after the return date for the appeal. LSA–C.C.P. Arts. 2161 and 2162; Orrell v. Southern Farm Bureau Casualty Ins. Co., supra; Britt v. Brocato, La.App., 170 So.2d 516, cert. denied 247 La. 618, 172 So.2d 701.

Housing Authority asserts that the law exempts it, as a public body, from furnishing an appeal bond.

LSA–R.S. 13:4581 provides:

"State, parish and municipal boards or commissions exercising public power and functions shall not be required to furnish any appeal bond; or any other bond whatsoever in any judicial proceedings instituted by or brought against them."

The Housing Authority of the City of Opelousas was created pursuant to LSA–R.S. 40:381 et seq., known as the

Housing Authorities Law. The function of The Housing Authority is to relieve slum or blighted areas through the construction of low-rent housing. See State ex rel. Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725. Such an authority is a corporate public body. LSA–R.S. 40:391. The Housing Authority must be classified as a public board within the meaning of the above statute. Hence, the statute exempts the Authority from furnishing an appeal bond.

We conclude, as did the Court of Appeal, that the appeal should be maintained.

### On The Merits

The questions presented on the merits relate to the liability of Southern, the contractor, for "liquidated damages" under the contract and the liability of Housing Authority for legal interest and costs of courts.

The facts are these: On November 29, 1960, the Housing Authority contracted with Southern for the construction of forty low-rent housing units in Opelousas. The contract allowed Southern 320 calendar days, or to October 14, 1961, to complete the work.

The contract provided for time extensions and "liquidated damages" as follows:

"If the work is delayed by any act or neglect by the local authority or its representatives, or by changes in the work, or by strikes, fire, freight em-

bargoes, unusually severe weather, or by unforeseeable causes beyond the control and without the fault of the contractor, then, if the contractor shall within ten days from the beginning of such delay notify the contracting officer of the cause and extent thereof, the Local Authority, subject to verification of the facts and to approval by the PHA, shall extend the time for completing the work."

\*      \*      \*      \*      \*      \*

"If the contractor fails to complete the work within the time specified in the Special Conditions, plus any extension of time granted by the Local Authority pursuant to the foregoing provisions, then the contractor shall pay to the Local Authority as fixed, agreed, and liquidated damages (it being impossible to determine the actual damages occasioned by the delay) for each calendar day of delay, until the work is completed, the amount set forth in the Special Conditions, and the contractor and his sureties shall be liable for the amount thereof."

In the special conditions, the contract fixed the "liquidated damages" at the rate of $40.00 per day, computed on the basis of $1 for each housing unit.

Having filed requests for extensions under the foregoing contract provision, Southern completed the work on May 16, 1962, two hundred and fourteen days after the original completion date.

After the project was completed, the Housing Authority acted on the various requests for extensions and granted 35 days. It notified the contractor of the extension and at the same time of the withholding of "liquidated damages" from the contract price in the sum of $7,160.00 for the remaining 179 days overrun. The contractor's suit followed.

Southern asserts it is entitled to the full contract price since the housing units were completed within the 322 days extension allowable from 39 requests filed by it. Alternatively, if completion overran the allowable extension, the Housing Authority never put it in default as required by law for collection of delay damages.

Housing Authority contends the completion was delayed 179 days beyond the term of the contract. The contractor timely filed only twelve extension requests, justifying an extension of 35 days; the remaining requests were neither timely filed nor validly based. It further contends that a putting in default was unnecessary to collect the stipulated damages in the present case. But if such be required, the evidence sufficiently establishes a putting in default.

We have examined the additional extensions claimed by the contractor. The contract required that all extension requests be made within ten days from the beginning of the delay. The contract also limited the grounds for extension. From the evidence,

we are convinced the position of the Housing Authority is correct: the disputed requests were untimely and lacked a valid basis under the contract.

The prime question is whether a putting in default is a prerequisite to the collection of "liquidated damages" under the contract.

Under the Louisiana Civil Code, the building contract is classified as a contract *to do*. LSA–C.C. Arts. 1883, 1926. The "liquidated damages" provision is classified as a penal clause for delay. LSA–C.C. Arts. 2117, 2125. Such a penal clause is designed to fix the measure of damages in advance and to constrain the timely performance of the principal obligation. LSA–C.C. Arts. 1934(5), 2117, 2125; 25 Tul.L. Rev. 407, 408. No showing of pecuniary or other actual damage is required to enforce the clause. Stewart-McGhee Construction Co. v. Caddo Parish School Board, 165 La. 200, 115 So. 458.

The following Civil Code Articles govern the default issue as framed by the present case:

Article 1931. "A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract."

Article 1933. "When the breach has been passive only, damages are due from the time that the debtor has been put in default, in the manner directed in this chapter. * * *"

Article 2126. "Whether the principal obligation contain, or do not contain, a term in which it is to be fulfilled, the penalty is forfeited only when he who has obligated himself either to deliver, to take, or to do, is in default."

■ Southern violated its contract by delay in performance. Housing Authority failed to get its performance on time. Although the contract contained a term, the delay is a passive violation. LSA–C.C. Art. 1931; Haffner & Taylor v. Perloff, 174 La. 687, 141 So. 377; Godchaux v. Hyde, 126 La. 187, 52 So. 269. See also Erwin v. Fenwick, 6 Mart. (N.S.) 229.

The damages sought are moratory, or delay, damages fixed in a penal clause. The contract contains no provision dispensing with a putting in default by the act of the creditor. See LSA–C.C. Art. 1911. Hence, under the codal articles such a putting in default is a prerequisite to recovery under the penal clause. Damages are due only "from the time that the debtor has been put in default." LSA–C.C. Arts. 1933, 2126; Haffner & Taylor v. Perloff, supra; Herman Bros. v. Troxler, 166 La. 587, 117 So. 727; Godchaux v. Hyde, 126 La. 187, 52 So. 269; Davis v. Glenn, 3 La.Ann.

444; Smith, The Cloudy Concept of Default, Twelfth Annual Institute on Mineral Law (1965) 3, 7–8; 33 Tul.L.Rev. 180, 197.

In Davis v. Glenn, supra, the Court stated:

"As long as the obligee does not demand the execution of the contract, the law supposes that it is because the non-performance does him no injury. Hence, without a putting in default, damages are not due; nor, by consequence, the stipulated penalty, which is intended as a compensation for damages. In the Roman law it seems that the penalty was incurred by the expiration of the term, according to the maxim, Dies interpellat pro homine; but in France, under the Napoleon Code, which we have copied, the principle was followed which controls the right to damages, except in a limited class of cases, and makes the putting in default a prerequisite. Hence the expiration of the term does not render the penal clause executory, unless it has been stipulated that the obligor should be in default by the mere expiration of the term."

■ Acknowledging the foregoing jurisprudence, the Housing Authority contends that extraneous circumstances in the present case made time of the essence of the contract and obviated the necessity of a putting in default. Reference is made particularly to an exchange of correspondence near the midpoint of the contract's original

term concerning a lag in construction. In its reply to a Housing Authority letter, the contractor added the following comment: "[W]e shall do everything possible to complete this project on or ahead of the scheduled time as I know you have a great need for these units." In our opinion, the circumstances relied on are insufficient to dispense with a putting in default at the crucial time. Especially is this true in the present case because of the contract extension provision and the pendency of time extension requests.

Housing Authority also asserts it need not prove a putting in default because plaintiff has denied it breached the contract, by asserting extensions sufficient to make its performance timely. Housing Authority relies upon the decisions of this Court in Wadkins v. Wilson Oil Corporation, 199 La. 656, 6 So.2d 720 and Louisiana Farms Co. v. Yazoo & M. V. R. Co., 179 La. 539, 154 So. 445. The Wadkins case was a suit to cancel an oil and gas lease for breach of the development obligation. In its answer, the defendant denied the breach. The Louisiana Farms case was a suit for compensatory damages for breach of a verbal contract. In its answer, the defendant denied the existence of the obligation in the contract. The petition in both suits was founded on an unperformed contract. These decisions are inapplicable to a demand for damages merely for delay under a penal clause in a performed contract.

Southern contends that the trial judge erred in allowing the filing of an amended answer to expressly plead a putting in default. The original answer had alleged that the delay was "unauthorized" and "due to the sole fault of plaintiff." Some evidence had been admitted without objection concerning default. We find no error in this ruling. See LSA–C.C.P. Art. 1151.

More difficult is the question of whether the contractor was put in default by the act of Housing Authority. Article 1911 of the Louisiana Civil Code provides that an obligor may be put in default:

* * * "By the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses." * * *

As a putting in default, Housing Authority relies upon the following: (1) a letter of June 2, 1961, advising the contractor that it was 8.5% behind schedule, referring to liquidated damages, and requesting faster progress; (2) a letter of July 6, 1961, advising the contractor that the construction was 20% behind schedule and requesting increased staffing; (3) a verbal demand on October 10, 1961; (4) a verbal demand on

November 22, 1961; and (5) a letter of April 5, 1962, demanding performance of the contractor.

Housing Authority failed to establish a putting in default by verbal demand. But it relies strongly on the three letters to the contractor. The contractor's receipt of these letters is undisputed.

■■■ The written demand mentioned in the codal article need not be in any particular form. Fox v. Doll, 221 La. 427, 59 So.2d 443, 1 Loyola L.Rev. 127, 142. However, the article states that it shall be made "at or after the time stipulated for the performance." As applied to this case, the time-phrase means at or after the work completion date set by the contract. The purpose of the demand is to give the obligor a warning before he is called upon to pay. It is designed to establish fault by delay. Smith, The Cloudy Concept of Default, Twelfth Annual Institute on Mineral Law (1965), 3, 7–8.

■■■ Housing Authority sent the letters of June 2, 1961, and July 6, 1961, near the midpoint of the contract's original term. Although they refer to a lag in construction and liquidated damages, they cannot properly be considered a putting in default. Because of their timing, they should be classified as a normal part of intermediate progress supervision.

■■■ The letter of April 5, 1962, however, is subject to a different classification. Housing Authority sent it to the contractor after the completion date under the contract.[1] The letter reads:

"We wish to call your attention to stipulations contained in the contract for LA–55–2, Special Conditions, Page K–1, paragraph 2, Liquidated Damage, of the book of specifications.

"Since you are operating on over run of contract time it would be advantageous to you to expedite the finish of LA–55–2 as speedily as possible. An additional factor that necessitates the speedy finish of LA–55–2 is the large back log of applications for housing on file in this office, it is imperative that these Units be delivered to the Opelousas Housing Authority as soon as possible."

The letter contains a demand for performance and refers to liquidated damages. In our opinion, the demand is sufficient to constitute a putting in default. See Fox v. Doll, supra; Spurrier v. Sheldon, 6 La. 182; and 1 Loyola L.Rev. 127, 142.

Delay damages are due from the time the debtor was put in default. LSA–C.C. Art. 1933. Hence, under the penal clause, Housing Authority is entitled to delay damages from the contractor's receipt of the letter, that is, for 39 days or the sum of

1. November 18, 1961, as extended.

$1560.00. The judgment will be amended accordingly.

A final question remains: whether plaintiff can recover legal interest and court costs from the defendant. As we have noted, Housing Authority is a governmental agency. The Court of Appeal concluded that the traditional rule of governmental immunity from liability should apply. We disagree.

LSA-R.S. 40:474 specifically authorizes the Housing Authority to sue and be sued. Under Article III, Section 35 of the Louisiana Constitution, as amended in 1960, the authorization operates as a waiver of immunity from liability for interest and court costs. Pittman Const. Co. v. Housing Auth. of New Orleans, La.App., 169 So.2d 122, cert. denied 247 La. 343, 170 So.2d 865. Plaintiff prayed for legal interest from judicial demand and court costs. The judgment should be amended to allow these items.

For the reasons assigned, the judgment of the Court of Appeal in favor of plaintiff, Southern Construction Company, and against the defendant, Housing Authority of the City of Opelousas, is reduced to the sum of $5600.00, with legal interest on the principal amount from judicial demand until paid and all costs of court. As amended, the judgment of the Court of Appeals is affirmed.

197 So.2d 635