242 So.2d 614 (1970)
ELITE HOMES, INC.
v.
Dorothy L. YOUNGBLOOD, wife of/and Harold M. HERRMANN et al.
No. 3647.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1970.
Writ Refused November 9, 1970.
On Rehearing December 7, 1970.
Rehearing Denied January 11, 1971.
Writ Refused March 10, 1971.
*615 Morphy & Freeman, A. D. Freeman, Jr., New Orleans, for Elite Homes, Inc. and Boston Insurance Co., plaintiffs, defendants in reconvention-appellants.
David L. Morgan, Jr., New Orleans for Dorothy L. Youngblood, wife of/and Harold M. Herrmann, defendants, plaintiffs in reconvention-appellees.
Before SAMUEL, BARNETTE and DOMENGEAUX, JJ.
SAMUEL, Judge.
This suit on a $18,200 building contract was brought by the contractor against the owners and their lending institution, Dryades Savings & Loan Association, for the final two payments, totaling $5,460, allegedly due under the contract. The owners answered in the form of a general denial and reconvened against the contractor and its surety, Boston Insurance Company, for damages in the sum of $16,300 to correct alleged deficiencies, liquidated damages of $5 per day under the demurrage clause of the contract for failure to timely perform, and a ten percent attorney's fee.
Thereafter plaintiff filed third-party demands against various subcontractors and reconvenors filed two supplemental petitions increasing their demand by the sum of $12,000 for failure to grade the property. The following year reconvenors filed a third supplemental petition increasing their demand for damages to the sum of $51,459.17. At a pretrial conference plaintiff offered to buy the property for the sum of $27,100 less the outstanding indebtedness. The offer was declined.
Following trial on the merits, and after stipulation by all counsel that Dryades had acted only as an escrow agent, judgment was rendered on the main demand in favor of defendants, dismissing plaintiff's suit, and on the reconventional demand in favor of plaintiffs in reconvention and against the contractor and its surety in the sums of $4,734.18 for damages and $473.42 as an attorney's fee and expert fees in the amount of $100 for each of three experts called by plaintiffs in reconvention. The expert fees were taxed as costs to be paid by the contractor and its surety. There was also judgment in favor of the contractor on its various third-party demands against the subcontractors but, no appeal *616 having been taken therefrom, those demands are not before us. The judgment orders Dryades to apply the $5,460 it held in escrow to the payment of the judgment, first to the owners, second to the attorney's fee, and third to the expert fees.
Plaintiff and its surety have appealed suspensively. In this court they contend: (1) the trial court awards for defects in construction were made without adequate evidence that the defects existed and despite positive testimony the residence was completed to a high standard of workmanship; and (2) a $2,000 award of damages for improper grade, as well as awards for demurrage and an attorney's fee, were erroneous. The owners have answered the appeal, primarily praying that the judgment be amended to include complete demolition and reconstruction of the existing house, and, alternatively, that the judgment in their favor be increased to the sum of $51,459.17, with a corresponding increase in the attorney's fee, and that the award for demurrage be increased to the sum of $3,285.
On August 4, 1966 plaintiff and the owners entered into the written contract for the construction of a residence on property then owned by the latter in the Parish of Orleans at a price of $18,200. Dryades, which financed construction, was a party to the contract and Boston Insurance was the contractor's surety. The contract provided the work was to be done to the satisfaction and under the direction of Dryades' building expert, Sidney A. d'Armas, and in strict accordance with the drawings and specifications identified therewith. Completion was required by February 1, 1967 under penalty of $5 per day liquidated damages for each day the work remained incomplete "without demand or putting in default". The contract further provided for a reasonable attorney's fee, the surety's obligation thereon being limited to ten percent of the amount of the bond.
On February 28, 1967 plaintiff requested acceptance of the house and the fourth payment under the contract. The owners refused to accept; instead they presented the builder with a list of 55 items requiring correction. In March, 1967, after correcting 22 items on the list, plaintiff again requested acceptance and payment and the owners again refused. Plaintiff then instituted this suit.
Twenty-three witnesses testified at the trial. Plaintiff's witnesses who offered pertinent testimony to the issues now involved were: Joseph R. Fritscher, a construction expert; Murvan M. Maxwell, an architect; Jefferson Ruck, a general contractor; Gerald Vanderford, a general contractor; and Joseph J. Krebs, Jr., civil engineer and surveyor. Various salesmen and third-party defendant subcontractors testified as to their specialties, all testifying they had performed in a workmanlike manner. Pertinent testimony offered on behalf of defendants was given by the owners, E. Eean McNaughton, Jr., an architect, Errol E. Kelly, a surveyor, and Erwin Deutsch and Ernest Stahler, construction experts.
The owners complained of 18 deficiencies, including inferior cement work, improper installation of fixtures, materials and/or equipment, unauthorized substitutions not called for by the plans and specifications, defects in the den floor, improper painting, and improper elevation of the slab.
The trial judge viewed the premises after the case had been submitted. In detailed reasons for judgment he outlined individually most of the awards he refused to make, those he made and the amounts thereof, and the testimony on which his refusals and awards were based. He awarded a total of $2,439.18 for unsatisfactory cement work, dressing and finishing, a brick entrance stoop, stripping on a jalousied door, a defect in an imitation marble top in the lavatory, improper installation of a soap dish, lavatory bowl, trap cover and kitchen counter top, the den floor which was not level, repainting certain ceilings and walls, and the substitution *617 of a heating-air condition unit of different make and lesser capacity than agreed upon between the owners and the contractor.
We find unnecessary a detailed discussion of all of the testimony relative to these awards and refusals. It suffices to say that, from our review of the entire record, we are of the opinion the evidence as a whole amply supports these factual findings and conclusions.
The remaining issues to be considered relate to grade (or height of the slab), demurrage, the attorney's fee and the expert fees. The issue relating to the height of the slab is the most serious presented. The slab is 11¼" lower than required by the specifications. The lot on which the house is built slopes from front to rear, the present grade is the highest elevation in the square, higher than any of the seven buildings in the immediate area, and a slab at the specification level would have caused the lot to drain on the adjacent properties to the extent that the owners may have been compelled to erect a retaining wall. The testimony contained in the record, even including that given by Mr. McNaughton, the architect who was the chief witness for the owners, establishes that despite the need for any corrections, and despite the present elevation of the slab, the house was habitable and there were no factors which would make it uncomfortable.
Plaintiff's supervisor of construction testified the slab height as constructed was agreed upon between himself and Mr. d'Armas, the building inspector named in the contract. Under the contractor's provisions the first payment was to be made after the foundation was installed and the floor slab poured. As that payment and the following two of the five payments called for by the contract were made by the homestead, and as Mr. d'Armas was not called as a witness by the owners, we accept this testimony as correct. It appears to us the homestead would not have made any of the first three payments in the absence of an acceptable slab elevation. The record establishes that in order to bring the slab up to the elevation required by the specifications the house would have to be demolished, a new slab poured above the existing one (assuming the piles were adequate), and the house rebuilt. If complaint relative to the slab had been made to the contractor at the proper time, or if the first contract payment had not been made because of improper slab elevation, the contractor would have had an opportunity to avoid the major construction which the owners now alternatively seek to have demolished.
While we do not suggest the building inspector had authority to change the specifications, the contract provides that all of the work was to be performed to his satisfaction and under his direction and that his decision would be final. For the purpose of obtaining proper construction he represented both the homestead and the owners; and, as we have pointed out, from the time the slab was poured, and even prior to that pouring he was aware of the difference between the slab elevation called for by the specifications and its actual or proposed elevation. Under all of these facts and circumstances we are of the opinion the owners are now estopped from complaining about the present slab elevation. See P. Olivier & Sons v. Board of Com'rs., 177 La. 157, 148 So. 12; Justiss-Mears Oil Company v. Pennington, La.App., 132 So.2d 700. Accordingly, the $2,000 award for this item must be disallowed and we will reduce the judgment on the reconventional demand by that amount.
We do not agree with appellees' contention that the $295 award for demurrage should be increased to $3,285, i. e., $5 per day from February 1, 1967, the date the contract calls for completion, to November 13, 1968, the date on which the trial court judgment was rendered. We agree with the trial court's award of $5 per day from February 1, 1967, the date on which completion was required by the contract, through March 31, 1967, the date on which *618 plaintiff tendered the residence for acceptance after repairing some of the deficiencies of which the owners complained. At that time, March 31, 1967, there was substantial performance of the contract.
The established jurisprudential rule is that where a contractor has not completed the work called for in a building contract or where he has performed such work in a defective manner, but where there has been substantial performance, the owner cannot avoid payment; he must pay the full contract price less the actual cost of completion and corrections of unfinished or defective work, the burden being upon the owner to allege and prove the nature and extent of such work and cost thereof. Federico v. Kratzberg, La.App., 163 So.2d 843 and cases cited therein. As the owner must make payment of the contract price less cost of completion and corrections under these circumstances, it follows that his right to collect damages in the form of demurrage ends upon substantial performance and tender.
Finally, plaintiff's complaints relative to the awards of an attorney's fee and expert fees are based solely on the assumption that plaintiff is entitled to a judgment in its favor in all respects. The assumption is incorrect; and we find no error in the trial court's award of an attorney's fee of 10% of the total amount recovered by appellees or in his awards of expert fees. However, because we will reduce the judgment in favor of the appellees by disallowing the $2,000 award for improper elevation of the slab, we also will reduce the award for an attorney's fee by $200 (10% of that $2,000 disallowed award).
We also note the trial court judgment fails to make provision for payment by Dryades of any amount held by that Association in excess of the total amounts awarded to the appellees, including the attorney's fee, and the amount of the expert fees taxed as cost. We will insert such a provision in our decree.
For the reasons assigned, the judgment appealed from is amended so as to: (1) decrease the award (other than for an attorney's fee) in favor of the plaintiffs in reconvention, Dorothy L. Youngblood, wife of/and Harold M. Herrmann, and against the defendants in reconvention, Elite Homes, Inc. and Boston Insurance Company, in solido, from the sum of $4,734.18 to the sum of $2,734.18; (2) decrease the award for an attorney's fee in favor of plaintiffs in reconvention, Dorothy L. Youngblood, wife of/and Harold M. Herrmann, and against the defendants in reconvention, Elite Homes, Inc. and Boston Insurance Company, in solido, from the sum of $473.42 to the sum of $273.42; and (3) order the original defendant, Dryades Building & Loan Association, to pay to the plaintiff, Elite Homes, Inc., the remainder of the money held by the Association in escrow after it has paid the awards made to plaintiffs in reconvention, Dorothy L. Youngblood, wife of/and Harold M. Herrmann, and the expert fees. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs of this appeal to be divided equally between appellants and appellees.
Amended and affirmed.

ON REHEARING
Before SAMUEL, GULOTTA and BARNETTE, JJ.
SAMUEL, Judge.
On applications for rehearing filed by the owners, Mr. and Mrs. Herrmann, and by the contractor, Elite Homes, Inc., we granted a rehearing limited to the following issues: (1) a $400 award to which the owners contend they are entitled for land fill allegedly included in the contract and not furnished by Elite Homes; (2) an additional attorney's fee to which the owners contend they are entitled; and (3) legal interest to which the contractor contends it is entitled on that portion of the contract price it recovers herein.
*619 The $400 claimed for land fill was not awarded because our examination of the record failed to reveal any evidence establishing either the cost of the disputed amount of filling or its inclusion in the contract price. A rehearing was granted on that issue to give the owners an opportunity to point to such evidence. They were unable to do so and, as we are now fully satisfied the record contains no such evidence, we are unable to make the award.
The owners originally argued the second issue, attorney's fees, only in relation to the total amount they claimed. Now they claim attorney's fees as established by the building contract in suit without regard to the amount of their recovery. Our reexamination of the contract reveals it contains two attorney's fee provisions, one applicable to the surety and the other applicable to the contractor. In addition to the amount of the bond ($18,200), the contract makes the surety liable for attorney's fees which it fixes "at ten percent on the amount of the foregoing bond." The contractor is obligated to pay "all and any reasonable attorneys' fees,".
The very recent Supreme Court case of Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386, is applicable to the question of attorney's fees due by the surety. In that case the contract provided for attorney's fees of 5% of the amount of the bond and such fees, in the total amount of $4,608.20 (5% of $92,164, the amount of the bond) were allowed despite the fact that the total recovery by the owner was only $8,152.50. The court held the parties were free to contract as they saw fit with respect to attorney's fees; they had recited the exact amount payable for such fees if the same were incurred; and the award for those fees constituted damages which had been liquidated by the contract. Insofar as the surety in the instant case is concerned, and in view of the extensive litigation herein, we find Maloney indistinguishable.
However, as we have just pointed out, the contract obligates the contractor to pay only a reasonable attorney's fee which the trial court set at $473.42, 10% of the amount recovered, and which we reduced in our original decree to $273.42 simply as a result of reducing the amount recovered from $4,734.18 to $2,734.18 and taking 10% of the latter figure. As there has been no showing that the 10% of recovery allowed by the trial court is unreasonable, we remain of the opinion that $273.42 is the full extent of the contractor's liability for attorney's fees. Thus, the owners are entitled to a total attorney's fee of $1,820, $273.42 of which the contractor and the surety are obligated to pay in solido and $1,646.58 of which the surety alone is obligated to pay.
The contractor's claim relative to interest, the third issue before us, has merit. Its suit was for the balance of the contractual purchase price, $5,460, with legal interest thereon from date of judicial demand. We are now satisfied it is entitled to legal interest on any recovery made by it in this suit. However, our consideration of the question on rehearing has resulted in the conclusion that we were originally in error on a closely related matter, legal interest on the amount awarded to the owners.
The judgment appealed from awarded the owners the sum of $4,734.18 together with legal interest thereon from date of judicial demand. In our original opinion and decree we reduced the amount of this award but continued to allow interest on the reduced amount. We were in error in doing so. The owners are not entitled to interest on the amount awarded them for the reason that said amount is simply an offset or reduction in what they otherwise would have been required to pay the contractor. Under these circumstances they are not entitled to legal interest.
This gives rise to another problem. The rehearing was limited to the three issues *620 set out above and, although it is closely related to the third issue, the owners have had no opportunity to argue the question of whether or not they are entitled to legal interest on the amount they recover. Accordingly, we reserve to the owners the right to make timely application for another rehearing solely on this question.
In connection with our decree we note there is a balance of $605.82 left after the total of the awards, for expert and attorney's fees and to the owners as a reduction, is subtracted from the $5,460 balance due on the contract price. We also note that during argument counsel for Elite Homes and Boston Insurance informed us there is no dispute between those litigants, inter se, regarding payment of attorney's fees because of indemnity agreements between them.
For the reasons assigned, our original decree is recalled and the judgment appealed from is recast as follows:
It is ordered, adjudged and decreed that the expert fees of Errol E. Kelly, E. Eean McNaughton and Erwin Deutsch be fixed in the sum of $100 each, which fees are taxed as costs and are to be paid by defendants in reconvention, Elite Homes, Inc. and Boston Insurance Company, in solido.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiffs in reconvention, Dorothy L. Youngblood wife of/and Harold M. Herrmann, and against defendants in reconvention, Elite Homes, Inc. and Boston Insurance Company, in solido, in the full sum of $2,734.18.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiffs in reconvention, Dorothy L. Youngblood wife of/and Harold M. Herrmann, and against defendants in reconvention, Elite Homes, Inc. and Boston Insurance Company, in solido, for attorney's fees in the full sum of $273.42.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiffs in reconvention, Dorothy L. Youngblood wife of/and Harold M. Herrmann, and against defendant in reconvention, Boston Insurance Company, for additional attorney's fees in the full sum of $1,546.58.
It is further ordered, adjudged and decreed that Dryades Building & Loan Association apply the $5,460 held in escrow by it as follows: (1) first to the $300 in experts' fees: (2) second to the $2,734.18 award to plaintiffs in reconvention, Dorothy L. Youngblood wife of/and Harold M. Herrmann, after deducting therefrom the amount of legal interest due on $605.82 from April 7, 1967; (3) third to the attorney's fee of $1,820; and (4) all of the remainder to be paid to Elite Homes, Inc.
It is further ordered, adjudged and decreed that all costs in the trial court be paid by Elite Homes, Inc. and Boston Insurance Company and all costs of this appeal be divided equally between appellants and appellees.
Original decree recalled; recast and affirmed in part.