YELVERTON, Judge.
This appeal by Norman Martin (substituted as plaintiff for the original plaintiff, Southwood Development Corporation) asks for our review of a trial court decision rejecting his claim against Thomas Supply, Inc., for payment of money due under a contract. The trial judge found after a trial that the contract, which was an agreement to pave a street and participate in the paving cost, was not performed on time, and dismissed Martin’s suit to make defendant pay its part of the paving. We reverse, finding that the trial court erred in not considering the effect of defendant’s failure to put plaintiff in default. Finding from the record that defendant failed to put Martin in default before performance, we conclude that defendant cannot now avoid its part of the contract, and we shall render judgment in Martin’s favor as prayed for and as proved.
In late 1981, wanting to expand his air conditioning supply business in the Alexandria area, Larry Thomas found the land at the location he wanted and agreed to buy it from its owner, Martin. The street in front of the property was not paved. Both the buyer and seller wanted it paved, and so they entered into a separate agreement, in the form of a letter from Thomas to Martin, dated January 18, 1982, which said this:
“If you will have the 100 ft paved and supply water, sewer and electric to the site, and do so at the earliest, and try to have it ready for use in 90 days, if possible, we will pay $3,000.00 for half the cost of paving 60 ft. upon completion and acceptance of the street.”
It is this contract which forms the basis for plaintiff’s suit.
While Martin set about to get the street paved, Thomas began the construction of the building for the new business. Both parties encountered numerous problems. Unknown to either party at the time of the confection of both the contract of sale and the contract to divide the paving costs, there were city zoning requirements for Southwood Industrial Park (where the property was located), to accommodate the new business, that had to be met, and these zoning changes took unanticipated time.
Thomas had a contract with K & B Steel Builders, Inc., through Kenneth Long, for the construction of the building. Long began clearing the lot and preparing the foundation. After the architectural drawings were approved by the State Fire Marshall, they were submitted to the City of Alexandria for a building permit, and a temporary foundation permit was issued on March 22, 1982. Foundation work proceeded until Long was instructed to cease operations because the property was not subdivided, a necessary requirement for a permit. The final building permit was issued following the approval of the Southwood Industrial Park plat at the March 30, 1982, meeting of the Alexandria City Council. The building was completed on May 3, 1982. The parking lot was completed the day before defendant’s May 27 grand opening. The final construction on the property ended August 8,1982, when the parking lot was connected to the nearly completed street.
Martin used the services of Central Engineering and Surveying of Alexandria to perform the design work for the South-wood Industrial Park. Leon Bordelon, Central’s supervisor of surveying and drafting, testified that he received the order to begin work on the Industrial Street paving project on February 3, 1982. He laid the blame for the subsequent delay in getting approval of the Park to the policy of a new city engineer of strictly adhering to city ordinances and regulations. The plans for the Southwood Industrial Park were approved by the Alexandria City Council on March 30, 1982, at the urging of Thomas. Final bids for the paving project were received by April 23, 1982.
A paving contract between Martin and a paving contractor was executed on May 11, 1982. Work on the project commenced on May 17 and was completed on August 20. The side of Industrial Street opposite the *419 Thomas tract was completed first, due to soil compaction problems. The contractor testified that extensive rains delayed the completion of the paving.
After the street was paved, Martin asked defendant to pay its share. Defendant refused and this suit followed. Defendant answered the suit denying plaintiff’s allegations and pleading the affirmative defenses of offset, accord and satisfaction, failure of consideration, estoppel, and waiver. In a reconventional demand, defendant alleged that “time was of the essence” in the contract upon which plaintiff was suing, and that it was damaged due to plaintiff’s untimely performance of the paving contract.
After trial on the merits, the trial court rejected both the principal demand and the reconventional demand. It found that plaintiff was “not entitled to judgment ... due to the fact that time was of the essence in the contract and [Martin] failed to live up to his obligations” because of his failure to complete the contract “within a reasonable time.”
Martin appealed the rejection of the principal demand. Defendant did not appeal the rejection of its reconventional demand.
The trial court committed an error of law in finding that defendant’s obligation to pay for its portion of the paving project was extinguished because of plaintiff’s delay in completing the project. Only if the 90 day period expressed in the contract could be considered a term within which performance had to be completed under LSA-C.C. art. 2048, as that article then read, could defendant’s obligation to pay under the contract be extinguished due to plaintiff’s untimely performance. The language of the contract can hardly be deemed a term, but rather appears to be more of a precatory request that the obligation of plaintiff to have the street paved be performed within the expressed 90 day period. Since no extinctive term was expressed in the contract, plaintiff had the duty to perform within a reasonable time. The trial court found that plaintiff failed to perform his obligation within a reasonable time. This finding of fact need not be disturbed in deciding the ease.
The Civil Code articles dealing with obligations with a term, as well as putting in default, were extensively revised by Act 331 of 1984. The present case arose and will be decided under the prior law.
Under former LSA-C.C. arts. 1883 and 1905 plaintiff’s obligation to perform the paving project was classified as an obligation to do. Defendant’s remedies for plaintiff’s failure to timely perform his obligation were set forth in former LSA arts. 1926-27. Former LSA-C.C. art. 1926 then read:
“Art. 1926. On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.”
Former LSA-C.C. art. 1927 read:
“Art. 1927. In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts.”
The following section of the Civil Code dealt with the liability of an obligor who failed to perform. his obligation, and the necessity of the creditor placing the debtor in default in order to receive damages for the breach. Former LSA-C.C. art. 1930 stated:
“Art. 1930. The obligations of contract [contracts] extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default.”
Former LSA-C.C. art. 1931 stated:
“Art. 1931. A contract may be violated, either actively by doing something *420 inconsistent with the obligation it has proposed or passively by not doing what was convenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract.”
Prior law required a putting in default for any passive breach where time was not of the essence. Former LSA-C.C. art. 1933 stated in pertinent part:
“Art. 1933. When the breach has been passive only, damages are due from the time that the debtor has been put in default, in the manner directed in this chapter.
“The rules contained in this and the preceding articles, however, are subject to the following exceptions and modifications:
“1. When the thing to be given or done by the contract was of such a nature, that it could only be given or done within a certain time, which has elapsed, or under certain circumstances, which no longer exist, the debtor need not be put in legal delay to entitle the creditor to damages.”
The failure to perform an obligation to do is a passive breach which requires the creditor to place the debtor in default to rescind the contract or obtain damages, unless the performance of the contract within a certain time was of such importance that the parties would not have contracted otherwise without such performance. Watson v. Feibel, 139 La. 375, 71 So. 585 (1916); Colongne v. Napolean Realty Co., 14 Orl.App. 112 (La.App.1916).
We are not convinced that defendant would not have entered into the paving contract had the unforseeable delays been known in advance. Other factors were equally important to defendant in choosing the particular tract on which to establish the business. The nearness of the tract to defendant’s competitors was a primary consideration in selecting that location.
Neither plaintiff nor defendant were aware of the strictness with which the new city engineer was applying the city’s zoning regulations. Soil compaction problems which hindered the construction of the street were unknown to either party at the time of contracting. Once the zoning problems were cured, plaintiff proceeded with dispatch to perform his obligation. Only the delays from soil compaction and weather then delayed the project.
In a case where the obligee might have, but did not, demand the execution of the contract when it came due, the implication of his inaction was that he was not damaged by the delay. That was the theory, under the former law, that justified the requirement of putting in default before announcing the rescision of an agreement. See Davis v. Glenn, 3 La.Ann. 444 (1848); Southern Construction Co. v. Housing Authority, 250 La. 569, 197 So.2d 628 (1967); Klumpp v. Colonial Pipeline Co., So.2d 457 (La.App. 3rd Cir.1980); 2 M. Planiol, Civil Law Treatise pt. 1, no. 166-68 at 100 (11th ed. La.St.L.Inst.trans.1959).
Defendant failed to place plaintiff in default. Larry Thomas was at the construction site weekly and was aware that the paving contract was not being performed timely. Since defendant had committed itself to the use of the property fronting the street, by becoming obligated to another on a building contract, it is apparent that only specific performance of the paving contract plus delay damages would have adequately compensated defendant for its losses. The failure of Thomas Supply to seek the remedies available under the law, operated as the loss of those remedies, and renders defendant liable to plaintiff for the $3,000 owed under the paving contract.
For these reasons, the judgment of the trial court dismissing the principal demand is reversed. Judgment is now rendered in favor of plaintiff, Norman Martin, and against defendant, Thomas Supply, Inc., for $3,000, with interest from judicial demand, and costs of this appeal and at trial.
REVERSED AND RENDERED.