MARVIN, Judge.
The plaintiff utility contractor appeals a judgment rejecting its demand against the water district for the $5,600 balance owed on a contract for extending water lines. The issues relate to the admissibility and sufficiency of evidence and as to why the $5,600 was not paid. We reverse and render judgment in favor of plaintiff utility contractor.
FACTS
The contract, signed in 1981, required the work to be completed by April 30, 1982. The parties signed three change orders for the work which increased the contract price. The first change order was not placed in evidence. The second change order was executed in May 1982 and provided that the contract period provided for completion would be unchanged. The third change order of August 10, 1982, which was later signed, extended the contract period 10 days.
Plaintiff notified defendant’s engineers in an August 18, 1982, letter that all work required by the contract and the three change orders had been completed and was ready for inspection. The engineers inspected the site on August 30, 1982, and found the work to be substantially completed. The water district formally accepted the work about September 21, 1982.
The water district paid plaintiff the final payment on the contract ($34,725.27) in mid-October 1982 but exacted plaintiff’s check in return in the amount of $5,600. These developments then ensued:
On November 8, 1982, the clerk of court certified that no liens had been filed against the project. Plaintiff sued defendant on January 7, 1983, alleging that the $5,600 represented the amount defendant retained for liens until the lien period expired and that defendant refused to pay this amount to plaintiff even though the lien certificate showed that no liens had been filed. Defendant admitted only that the parties had entered into the contract and otherwise answered in a general denial.
Plaintiff’s president testified on direct examination as the petition alleged. On cross-examination, he explained that in a telephone conversation, when he requested the final payment, he was told by defendant's project engineer that the $34,725.27 would not be released unless an amount was withheld as liquidated damages for failure to complete the work on time. Plaintiff’s president told the engineer he understood that any “squabbles about any time” had already been settled at the meeting on August 10, 1982. Because the engineer persisted that the owner would not release all of the final payment, plaintiff said he agreed to accept all but $5,600 but with the understanding or upon the condition that a meeting would be held in the hear future to resolve the dispute. This meeting was never held.
When the above discussion about the final payment was had, the Farmers Home Administration, which funded the project, had written its check for $34,725.27. Plaintiff’s president testified that he had obtained a “letter of credit” guaranteeing that amount so the payment could be released before the lien period expired. Rather than having the FHA check and the *329 letter of credit rewritten, plaintiff gave defendant a cashier’s check for $5,600 in exchange for the FHA check.
Under the described circumstances, the contractual provision stating that the contractor’s acceptance of final payment shall operate as a release of all claims against the owner, is not applicable or pertinent to the dispute over the $5,600.
On October 13, 1982, plaintiff wrote to defendant’s engineer, stating the understanding that the $5,600 would be “held in escrow by the Water District until the lien period has been satisfied” and that plaintiff would have a claim to the $5,600 once a clear lien certificate was produced.
The testimony conflicted whether a copy of this letter was given to defendant’s president when he gave plaintiff the FHA check in exchange for the $5,600 check. Even the testimony of plaintiff’s president indicates, however, that defendant considered the $5,600 as liquidated damages for delay in completing the contract and not as retainage for liens.
When defense counsel began cross-examining plaintiff’s president about whether the job had been completed on time, plaintiff objected on the grounds that defendant had not raised the issue of liquidated damages as an affirmative defense or as a reconventional demand. The objection was overruled and evidence of delays was presented by both sides, subject to plaintiff’s objection.
ADMISSIBILITY OF EVIDENCE OF DELAYS
A claim for liquidated damages is generally required to be raised as an affirmative defense or as a reconventional demand. Kean v. Lemaire, 451 So.2d 151 (La.App. 1st Cir.1984). The purpose of requiring affirmative defenses to be raised in the answer is to prevent surprise by giving the plaintiff fair notice of the nature of the defense and avoiding unexpected issues. Bank of Coushatta v. Evans, 313 So.2d 644 (La.App.2d Cir.1975).
This issue was not a surprise, because plaintiff knew defendant had claimed the $5,600 as liquidated damages when the checks were exchanged in mid-October 1982. Additionally, the objection to evidence of delays was raised after plaintiff’s president had testified at length about being told in the October telephone discussion with the engineer that the $5,600 represented liquidated damages. Plaintiff did not request a continuance that CCP Art. 1154 allows when a showing is made that the admission of evidence on issues not raised by the pleadings would cause prejudice.
We find no error in the trial court’s overruling plaintiff’s objection and admitting the testimony. Brown v. Sambo’s of Louisiana, Inc., 403 So.2d 813 (La.App.2d Cir.1981).
LIQUIDATED DAMAGE CLAIM
When a contractor has substantially performed a building contract, he is entitled to recover the contract price less whatever damages the owner may establish as attributable to a breach. Graham v. Lieber, 191 So.2d 204 (La.App.2d Cir.1966), writ denied.
The parties do not dispute that plaintiff completed or performed this contract. In such circumstances, the owner bears the burden of proving it is entitled to the amount withheld from the contract price.
Defendant calculated the $5,600 by counting the number of days between the stipulated completion date (April 30, 1982) and the date the work was certified as substantially complete by defendant’s engineer (August 30, 1982), or 122 days, less 10 days granted as an extension in the third change order. Defendant claimed 112 days at the contractual rate of $50 per day, or $5,600, as liquidated damages.
Plaintiff produced evidence of many delays caused other than by plaintiff, including the engineer’s delay in approving the list of materials submitted by plaintiff; the lack of certain permits which defendant *330 was required to obtain; deficiencies in the plans and specifications for the easing that linked the water plant to a tank; defendant’s requests for additional work to be done; and bad weather.
Plaintiff insisted that these matters automatically extended the completion date as long as defendant knew or was notified of the reason for the delay. This interpretation is not supported by the contract, which provides:
In the event additional time is earned by the CONTRACTOR under the terms of the AGREEMENT, or is granted by the OWNER, such fact shall not be interpreted as a waiver of the full obligation on the part of the CONTRACTOR to complete the WORK within the extended time. Request for extension shall be made with the next payment request following the event occasioning the delay. * * *
If the performance of all or any portion of the WORK is suspended, delayed or interrupted as a result of a failure of the OWNER or ENGINEER to act within the time specified in the CONTRACT DOCUMENTS, or if no time is specified, within a reasonable time, an adjustment in the CONTRACT PRICE or an extension of the CONTRACT TIME, or both, shall be made by CHANGE ORDER to compensate the CONTRACTOR for the costs and delays necessarily caused by the failure of the OWNER or ENGINEER. (Emphasis added.)
Although the contract term could have been extended because of the delays recited by plaintiff, the contract required plaintiff to request extensions in its payment requests or to obtain them in change orders. Other than the third change order granting the 10-day extension, there is no evidence that plaintiff obtained formal extensions of the completion date.
We deem that the trial court reasoned that defendant was entitled to liquidated damages for the delay in the completion of the work. We shall demonstrate why we do not agree. This contract was executed prior to the revision of the Civil Code provisions on obligations in 1984, and is governed by the law then in effect.
If a building contract provides for a completion date and contains a liquidated damage clause, it is a prerequisite to the recovery of delay penalties that the contractor be placed in default by the owner in the absence of a stipulation to the effect that the contractor would be in default by the mere expiration of the term fixed for performance. Former CC Art. 1911; Graham v. Lieber, supra. The mere fixing of liquidated damages does not dispense with the putting in default. Godchaux v. Hyde, 126 La. 187, 52 So. 269 (1910).
In some cases a stipulation in the contract that time is of the essence will obviate the need for a putting in default, but deciding whether time is of the essence more often turns not upon the terms of the contract itself but upon extraneous circumstances and upon the conduct of the parties in relation to the importance or unimportance of the time element. Williams Lumber Co., Inc. v. Stewart Gast & Bro., 21 So.2d 773 (La.App.Orl.1945); Binnings Construction Company, Inc. v. Louisiana Life Insurance Company, 139 So.2d 561 (La.App. 4th Cir.1962).
Here, the contractual provision on liquidated damages reads:
The date of beginning and the time for completion of the WORK are essential conditions of the CONTRACT DOCUMENTS and the WORK embraced shall be commenced on a date specified in the NOTICE TO PROCEED.
The CONTRACTOR will proceed with the WORK at such rate of progress to insure full completion within the CONTRACT TIME. It is expressly understood and agreed by and between the CONTRACTOR and the OWNER, that the CONTRACT TIME for the completion of the WORK described herein is a reasonable time, taking into consideration the average climatic and economic conditions and other factors prevailing in the locality of the WORK. *331 If the "CONTRACTOR shall fail to complete the WORK within the CONTRACT TIME, or extension of time granted by the OWNER, then the CONTRACTOR will pay to the OWNER the amount for liquidated damages as specified in the BID for each calendar day that the CONTRACTOR shall be in default after the time stipulated in the CONTRACT DOCUMENTS.
Although the contract states that time is an essential condition, and although the delays attributable to the owner did not automatically extend the contract, the conduct of the parties does not indicate that time was in fact of essence, or an essential condition.
Clear and express language must be used in stating that the contractor will be in default by the mere expiration of the term fixed for performance. See former CC Art. 1911(1) and cases interpreting it. Putting in default was dispensed with by the terms of the contract in Pamper Corporation v. Town of Marksville, 208 So.2d 715 (La.App. 3d Cir.1968), writ denied, and in Elite Homes, Inc. v. Herrmann, 242 So.2d 614 (La.App. 4th Cir.1970), writ denied. In the Marksville case, the contract specified that the contractor would automatically be in default if he had not completed all construction within the 180-day term. In the Herrmann case, completion of the work was required by a certain date under penalty of $5 per day liquidated damages for each day the work remained incomplete “without demand or putting in default.”
Putting in default was not dispensed with by the terms of the contracts in Godchaux v. Hyde, supra, and in Southern Construction Co. v. Housing Authority, 250 La. 569, 197 So.2d 628 (1967). In the Godchaux case the contract read:
It is agreed that, should said contractor fail to finish said work on or before the time specified he shall pay to or allow the said owner to keep out of any sum due him on this contract, by way of liquidated damages, the sum of seven 50/100 dollars per diem for each and every day thereafter the said work shall remain incomplete.
In the Southern Construction Co. case the contract read:
If the contractor fails to complete the work within the time specified in the Special Conditions, plus any extension of time granted by the Local Authority pursuant to the foregoing provisions, then the contractor shall pay to the Local Authority as fixed, agreed, and liquidated damages (it being impossible to determine the actual damage occasioned by the delay) for each calendar day of delay, until the work is completed, the amount set forth in the Special Conditions, and the contractor and his sureties shall be liable for the amount thereof.
The terms of the contract in question, quoted above, are similar. We find that a putting in default was not dispensed with by the terms of this contract.
Former CC Art. 1911(2) recognized that the obligor could be put in default
By the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.
Defendant did not sue plaintiff for liqui-^, dated damages and did not produce evidence of a putting in default in this suit. Defendant’s president testified that he never documented in writing that the $5,600 represented liquidated damages. The only act which might be construed as a verbal demand for liquidated damages made in the presence of two witnesses after the stipulated completion date is the meeting that we have mentioned that was held on August 10, 1982, when the third change order and 10-day extension were discussed.
Plaintiff’s president testified that he and his field superintendent attended this meeting along with defendant’s president, defendant’s project inspector, and two employees of Farmers Home Administration. *332 Plaintiff’s president testified that an agreement was reached at this meeting for plaintiff to do additional work and to charge the contract unit price rather than the current price of the materials. Plaintiff said this resulted in a loss of about $4,000 to plaintiff, and that plaintiff considered this agreement “settled any squabbles about any time.” Defendant’s president testified that he only granted plaintiff the extension of 10 days on August 10 to do the additional work, but he did not recall any mention of plaintiff doing this work at a loss. The testimony of defendant’s president about the August 10 meeting did not suggest in any way that defendant then demanded liquidated damages.
Even if we were to assume that a sufficient verbal demand had been made at the August 10 meeting to put plaintiff in default, that demand would entitle defendant to claim liquidated damages only from the date of the demand as extended (August 20), until the date plaintiff tendered the work for acceptance. See former CC Art. 1911(2); Southern Construction Co. v. Housing Authority, supra; Elite Homes, Inc. v. Herrmann, supra.
Plaintiff tendered the original and the additional work for acceptance on August 18, before the 10-day extension expired. There was no default in plaintiff's performance after August 10. There was no formal default in plaintiff’s work before August 10. Defendant’s failure to demand liquidated damages before August 10 constitutes a waiver of its right to claim liquidated damages for the time between April 30 and August 10, 1982.
In cases where the obligee might have, but did not, demand the execution of the contract when it came due, the implication or effect of the obligee’s inaction is that he was not damaged by the delay. See Southwood Development Corporation v. Thomas Supply, Inc., 469 So.2d 417 (La.App.3d Cir.1985), and authorities cited therein.
On April 30, 1982, defendant’s president and the project engineer signed a partial pay estimate presented by plaintiff which estimated that the job was then 54 percent complete and that the contractor’s construction progress was on schedule. This document of April 30, 1982, which was the date of completion stipulated in the contract, together with the absence of any demand for liquidated damages until at least August 10, strongly supports the conclusion that defendant considered it was not damaged by the delay and waived its right to claim liquidated damages.
The conversation between plaintiffs president and defendant’s project engineer in mid-October about the final payment does not constitute a putting in default because it occurred after the work had been accepted by the owner.
CONCLUSION
Defendant has failed to prove it is entitled to the $5,600 as liquidated damages. Having completed the contract, plaintiff is entitled to judgment for that amount, with legal interest from date of judicial demand until paid. The contract provides for interest at the maximum legal rate commencing on the first day after payment is due by the owner and continuing until the payment is received by the contractor, “if the OWNER fails to make payment 30 days after approval by the ENGINEER.” We do not apply this provision because defendant’s. engineer did not “approve” payment of the $5,600. The contract does not allow the recovery of attorney’s fees as prayed for by plaintiff.
DECREE
The judgment of the trial court is reversed, and judgment is rendered in favor of plaintiff, North Central Utilities, Inc., and against defendant, East Columbia Water District, for $5,600.00, with legal interest from date of judicial demand until paid, and all costs, here and below.
REVERSED AND RENDERED.