301 So.2d 729 (1974)
Christell WATTS, Individually and as natural tutrix of the minor, Betty Jean Watts, Plaintiff-Appellant-Appellee,
v.
The TOWN OF HOMER, Louisiana, Defendant and Third Party Defendant; Appellant and Appellee,
The CLAIBORNE PARISH SCHOOL BOARD, Third Party Plaintiff; Appellant and Appellee.
No. 12421.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1974.
Rehearing Denied November 5, 1974.[*]
*731 Gerard F. Thomas, Jr., Natchitoches, Shaw & Shaw by W. M. Shaw, Homer, for plaintiff-appellant-appellee.
Meadors & Meadors by William F. M. Meadors, Jr., Homer, for Town of Homer.
Mayer, Smith & Roberts by Charles L. Mayer, Shreveport, for Claiborne Parish School Bd.
Charles E. Welsh, Bossier City, for Confederate Memorial Medical Center.
Before BOLIN, PRICE and HALL, JJ.
Rehearing En Banc Denied November 5, 1974.[*]
PRICE, Judge.
This is an appeal from the judgment of the trial court awarding plaintiff the sum of $250,000 for the use and benefit of her minor daughter who sustained an injury at a playground constructed by the Town of Homer on property belonging to the Claiborne Parish School Board. Both the Town and School Board, who were named defendants, have appealed from the judgment holding them liable in solido for the child's injury and rejecting the School Board's third party demand against the Town.
Plaintiff has answered the appeal, asking for an increase in the amount awarded to the sum sued for, $782,500.
The issues raised on this appeal are multiple and arise out of a lengthy course of litigation. The injury happened on March 25, 1963. Prior to the filing of this suit on August 6, 1970, plaintiff brought a similar action against the same defendants, which was dismissed by the trial court for lack of jurisdiction on a finding that the resolution of the legislature attempting to waive the immunity of the defendants from tort liability enjoyed as governmental agencies was ineffective for technical reasons. This judgment of dismissal was affirmed by this court in the opinion reported at 207 So.2d 844. The sustaining of a plea of prescription by the trial court was not then passed on by this court as the issue was considered to be moot.
Prior to answering the plaintiff's petition in the present suit, the defendants filed a joint pleading asserting alternatively the defenses of res judicata, prescription and unconstitutionality of the resolutions granting legislative permission for this action.
We shall dispose of these preliminary questions before discussing the facts and issues involved in the merits of the case.

PLEA OF RES JUDICATA
Defendants base their exception of res judicata on the judgment of dismissal rendered July 14, 1967, in the first suit. A reading of the opinion of this court affirming the dismissal indicates that lack of jurisdiction for want of proper legislative authority to prosecute the action was the sole ground for rejection of plaintiff's suit. No consideration of the merits of her claim was reached in that suit. La.Civil Code art. 2286 in part provides:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. * * *"
For this article to apply it is clear that there must be a "thing adjudged." We think the case of Tucker v. New Orleans Laundries, Inc., 238 La. 207, 114 So.2d 866 (1959), is dispositive of this issue. In that *732 case the court speaking through Justice Hawthorne said:
"Under the law of this state, neither a judgment of non-suit nor one dismissing a suit for want of proper parties will serve as the basis for res judicata, for in such a suit the judgment of the court has decided nothing on the merits of the controversy. Weinberger v. Merchants' Insurance Co., 41 La.Ann. 31, 5 So. 728; Riggs Cypress Co. v. Albert Hanson Lumber Co., 127 La. 450, 53 So. 700. We do not think any citation is necessary for the legal proposition that where a court sustains an exception to the jurisdiction, plaintiff is not barred from bringing another suit in the proper forum, and that the second suit will not be amenable to a plea of res judicata." P. 872.
We find no merit in the plea of res judicata urged by defendants.

PRESCRIPTION
Any question of prescription is laid to rest by the action of the legislature in the adoption of Senate Concurrent Resolution 89 of the General Assembly for the year 1970 which authorized the filing of the present suit by waiving immunity of liability and specifically waiving prescription and peremption. Article III, Section 35 of the Louisiana Constitution grants this power to the legislature. The plea of prescription was properly overruled by the trial court.

CONSTITUTIONALITY OF SENATE RESOLUTION NO. 89 OF 1970
This attack rests on the contention the legislative resolution authorizing the suit provides any judgment rendered against the Town or School Board "shall be satisfied and paid only out of any funds to the credit of the General Fund of the Claiborne School Board and/or the Town of Homer, Louisiana, and/or any other funds available to said School Board and/or Town," which is contrary to Article 3, Section 35 of the Louisiana Constitution of 1921, which provides that a judgment against the State or any public body shall be payable only from funds appropriated for this purpose. This portion of the enabling resolution relating to a method of payment is superfluous to the issue of liability and should it be violative of the constitutional restrictions it would merely become ineffective. However, this issue relates to enforcement of the judgment and is not before the court at this time.

FACTUAL BACKGROUND OF PLAINTIFF'S ACTION ON MERITS
In the late afternoon of March 25, 1963, seventeen-month old Betty Jean Watts, the daughter of plaintiff, Christell Watts, was seriously injured when a steel pole of a swing set became dislodged and struck the child on the head as it fell to the ground. The child had been taken to the playground area by her seventeen-year old sister, Ada B. Watts, who watched after her while their mother worked. An older brother who accompanied the girls to the area was swinging on the set at the time the accident happened.
In an effort to provide a recreational program for children in the neighborhood where plaintiff resided, the Town of Homer several years prior to this accident acquired the playground equipment at an abandoned elementary school and placed it on property belonging to a church association in the area. A summer recreation program was carried on utilizing the equipment under the direction of William L. May, a teacher for the Claiborne Parish School Board, employed by the Town on a part-time basis for this purpose. During the year 1962, May was advised by the church association the equipment would have to be moved from its property. May, assisted by Reverend John Davis, Pastor of a church in the neighborhood, began looking for another site to continue the recreational facility for the benefit of children in this section of town. The school board owned a tract of *733 some 44 acres adjoining this neighborhood, of which only a small portion was being used for the Mayfield School. May and Davis approached the then Superintendent of Schools, F. C. Haley, in regard to using a plot of this tract which was not being used for school purposes and was on the side of the tract nearest the residential area and farthest removed from Mayfield School. Haley granted permission and the site was cleaned, graded and sodded by the employees of the Town during the remainder of the year 1962. During February and early March of 1963, the equipment was moved from the former church site and erected on the school board property by employees of the Town. At the time of the accident all of the equipment apparently was in place on the site but the fencing of the plot had not begun.
Christell Watts, in her petition initiating this action, alleges the Town of Homer (hereinafter referred to simply as Town) and the Claiborne Parish School Board (referred to usually as School Board) are liable in solido for damages resulting to the child as they entered into a joint venture in providing the playground and the installation of equipment was done in a careless and negligent manner constituting a constructive trap for children who were invited to use the facility.
Plaintiff further alleges the collapse of the swing which caused injury to the child resulted from the use of obsolete, worn equipment which was not properly installed in that the proper footing for the steel framing was not provided, nor were the side members securely tightened into the sleeve at the top of the frame by a set screw.
The Town answered plaintiff's petition, denying all allegations of negligence directed toward it, and specifically alleged the plaintiff was negligent in permitting her seventeen-month old child to enter upon the playground without proper supervision. For this same reason the alternative plea of contributory negligence is urged as a bar to plaintiff's recovery.
In its original and amended answer the School Board denies participating in any joint venture with the Town in establishing the playground and denies it was guilty of any negligence which caused the injury sued on. Alternatively, by third party demand, the School Board seeks judgment over against the Town for any amount awarded against it in this action.
The merits of the case were tried before Judge David Caldwell who was seriously injured in an automobile accident prior to the time the case was submitted for decision. After its submission a decision was rendered by the district judge of an adjoining district who was assigned to assist in Judge Caldwell's absence. Although Judge Caldwell adopted the written reasons given by the assigned Judge as his own and proceeded to sign the formal judgment in the trial court, it is apparent the primary evaluation of the evidence and testimony was accomplished solely from a review of the record.
The trial court found the evidence sufficient to establish a joint venture between the Town and School Board and further found the employees of the Town were negligent in the erection of the swing which was the cause of the injury to Betty Jean Watts, thus rendering the defendants liable in solido for her damages.
In addition to the preliminary matters previously discussed and disposed of heretofore, we have before us for review on this appeal the following issues:
1. Whether or not there was negligence on the part of the employees of the Town in the installation or maintenance of the playground equipment which was a legal cause of the child's injury.
2. Whether contributory negligence was established.
3. Should we find the evidence to sustain the trial court's finding of negligence *734 in the erection of the equipment, does the evidence establish a joint venture between the Town and School Board, or independent negligence on the part of the School Board which renders it liable in solido with the Town?
4. If the School Board is found solidarily liable, is it entitled to recover from the Town under the third party demand?
5. Is the amount of the award by the trial court either inadequate or excessive under the so-called "much discretion" rule?
6. The formal judgment signed in the cause fixes the fees of several expert witnesses and taxes them as costs. It further assesses all costs to defendant except those from which they are exempt by the provisions of LRS.13:4521. Did the legislature waiver of immunity from suit remove the benefits enjoyed under this statute?
We shall discuss these questions in the numerical order outlined above.

SUFFICIENCY OF PROOF OF NEGLIGENCE OF TOWN EMPLOYEES
The trial court properly described the cause of the accident as follows:
"The Watts child was struck on the head by a long steel pipe which served as one of the legs of a ∧ shaped swing. Defense counsel call it an `A' framed swing. However, photos introduced clearly demonstrate the absence of a cross bar between the front and rear legs. (Exhibit P5 #1 through 5) In part, the accident can be attributed to the failure of municipal employees to securely anchor the legs of the swing to the ground. The legs were stuck in concrete footings that apparently were too small to hold the swing in place while in use. Also, the legs were apparently not pinned or held in place by a screw at the top of the leg where support member joined the cross or top structure that actually afforded direct support for the swing itself.
"Plaintiffs alleged the accident occurred because the swings were old, obsolete and without proper footings and because the defendants failed to install an/or properly set screws, screws or bolts used to maintain the framework or the swing set in question. Having reviewed the extensive testimony, the Court is of the opinion, it is well established in this record that on this set of swings there either was no pin, screw or bolt to hold the top cross member to the leg of the swing or if there was one, it was not properly tightened or affixed to hold the leg to the top portion of the swing. The version accepted by the Court as most probable is there was no such pin, screw or bolt on this particular swing. However if there was one, the Court concludes it was not properly installed."
We find the evidence to amply support the foregoing factual finding of the trial judge.
The testimony of the Town recreation director, May, admits the swing set was not properly anchored which allowed the legs to raise out of the ground when the swing is used vigorously by an older child. The photographs in the record taken soon after the accident and before repairs were made, support plaintiff's position that the frame legs were not set in an adequate amount of concrete.
Although the Town employee who supervised the work testified the equipment was set up in the usual and normal manner and properly tested when reassembled, we find the preponderance of the evidence to establish this particular swing was not carefully assembled or adequately inspected for safety.
The Town contends the playground was being constructed as a summer supervised recreational facility only and not for general all year round public use, and that the *735 facility was not completed at the time of the accident as the perimeter fence had not been erected nor repairs made to a ditch through the area. Thus, it argues that the Watts children were trespassers on the property on the subject date and no duty is owed to the children other than to refrain from willfully or wantonly injuring them.
We do not find the evidence to show the Town took any affirmative precautions to indicate to the public the equipment being installed was not for general public use. Nor was any action taken to effectively prevent usage by neighborhood children of the equipment after it reached the stage of apparent completion of assembly. Although it is probably not necessary to determine the technical status of the child on the property for a resolution of the liability of the Town, we consider the circumstances involved would clearly render the Watts children invitees on the premises being occupied by the Town for recreational purposes.
It should have been reasonably foreseen by the Town that the erection of playground equipment on public property would attract children of all ages to the premises to use the equipment in the absence of positive measures to prevent their entry on the premises.
A municipality owes a duty to exercise ordinary and reasonable care in the erection and maintenance of public parks and playgrounds to protect against an unreasonable risk of injury to members of the public by defective equipment. Godfrey v. Baton Rouge Recreation & Parks Commission, 213 So.2d 109 (La.App.1st Cir., 1968). The degree of care increases when the presence of small children is expected. Taylor v. National Indemnity Co., 215 So.2d 203 (La.App.3rd Cir., 1968).
As a general rule a municipality must have notice of a defective condition on its property to render it liable for injuries caused by the defect. This rule has no application, however, where the municipality creates the defect or hazard.
We find the evidence to show the Town did not use reasonable care in the reassembly of the equipment and thus breached the duty owed to the injured child, Betty Jean Watts.

2. CONTRIBUTORY NEGLIGENCE
Defendants argue that Christell Watts was guilty of contributory negligence, barring her from individual recovery. This argument is predicated on the assertion that Ada B. Watts as custodian of Betty Jean was negligent in her supervision, and that her negligence is imputable to the parent.
Defendants argue that Ada B. was aware that the swing was not firmly anchored and should have taken the child to a place of safety. Although the evidence does show that she noticed the swing would kick-up while being used, we do not feel that this knowledge would reasonably lead her to believe that the frame would collapse as it did in this case. Therefore, we find the plea of contributory negligence to have been properly rejected.

3. LIABILITY OF SCHOOL BOARD
The trial judge primarily based the School Board's liability on the finding that it had engaged in a joint venture with the Town. In so finding, he relied on a number of factors which we find, even when taken together, fail to establish a joint venture between the parties.
It is true that the land upon which the playground sits belongs to the School Board, and we believe that the evidence establishes that F. C. Haley, then superintendent, had authority to give permission for the land to be utilized. Here, however, we believe School Board's participation ceased. No member of the School Board is shown to have had any knowledge of the use of school property. May, although admittedly a school teacher, clearly testifies that all *736 work done by him on the playground was done in connection with his job as recreation director for the Town and had nothing to do with his job with the School Board. The playground itself is located on the same tract of land as the Mayfield School. By reference to the plat of this property and other evidence, we understand the playground was a considerable distance from the school site and was never intended to be utilized in connection with school activities. There is a suggestion that the playground equipment itself belonged to the School Board. However, this is simply not supported by the evidence. The equipment was apparently originally donated by the Coca Cola Company to the Town, and at one time part of it might have been on the Homer Elementary School property, but the School Board had abandoned this equipment when the School closed many years prior to this incident.
On the other hand, the Town had utilized the equipment at the church association site for several years prior to the accident. Town employees relocated the equipment on the new site intending to use it in its new location for future Town sponsored recreation programs. Further, the evidence shows several members of the Town Council were aware of and apparently authorized the Town to undertake the project.
In Hawkins v. Travelers Indemnity Co., 73 So.2d 348 (La.App., 2d Cir., 1954), the court commented on the requirements of a joint venture as follows:
"There can be no joint venture or common enterprise of legal import unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each party must have some voice and right to be heard in its control or management."
We do not find the evidence to show any interest or advantage to the School Board in providing the playground. Nor do we find any intent for it to exercise equal control. The only manner in which control could have been exercised would have been for the Board to have refused to allow the use of its property for this purpose, which would not have appeared reasonable under the circumstances.
The trial court further ruled that regardless of a joint venture relationship being established, the School Board was guilty of independent negligence as owner of the property in failing to make an independent inspection. This finding is partially predicated on the assumption that the playground equipment also belonged to the School Board. As previously discussed, the evidence does not support such a finding.
Therefore, the sole question presented in this regard is whether or not the Board, as merely the owner of the land, owed any duty to the injured child, the breach of which was a legal cause of her injury.
The jurisprudence recognizes that a landowner is not an insurer against accidents happening on his property. Negligence must be established by the person sustaining an injury showing a breach of some duty owed to him by the landowner. The extent and nature of the duty varies according to the foreseeability of harm to others by the owner's conduct balanced against reason for the presence of the injured party on the premises.
In Taylor v. National Indemnity Co., 215 So.2d 203 (La.App., 3rd Cir. 1968), the court expressed the rule of negligence applicable to the issue herein involved concisely as follows:
"Negligence has been defined as the breach of the duty to protect against an unreasonable risk of foreseeable harm to others. A factor in determining the reasonableness of the risk is whether the magnitude of the risk created outweighs the utility or social value of the conduct creating it." (At page 206)
The extent of the School Board's action in the instant case was to permit the gratuitous *737 use of land belonging to it for an obviously worthwhile public purpose. Its duty to persons who it should anticipate coming upon the property was to refrain from permitting any foreseeably inherently dangerous or hazardous use to be made of the property. The operation of a public playground is not such a use.
The injured child was a member of the class of persons whom the School Board's action in permitting the use of the land for a playground was intended to benefit. The social values accruing to this class of persons by the conduct of the Board in permitting the use of its property for such a beneficial purpose far outweighs any foreseeable risk of harm by its action.

4. THIRD PARTY DEMAND
In view of our conclusion the School Board is not liable in this action, the third party demand becomes moot.

5. QUANTUM
After the leg of the swing hit Betty Jean, her sister, Ada, ran to her and threw the leg off the child. Betty Jean did not cry, but she would not walk and her eyes were rolling. Ada carried her from the playground in her arms. When Betty Jean's mother first saw her, blood had begun to flow from her nose and her ears. She attempted to get the child to nurse, but the child would not do it. Mrs. Watts then got her neighbor to drive her to the Campbell-Gladney Clinic, where she was seen by Dr. James F. Gladney, Jr. Dr. Gladney referred her to the Confederate Memorial Hospital in Shreveport, Louisiana. There she was operated on in an attempt to discover the source of her problem. Holes were drilled in her head to check for a blood clot. None was found but it was discovered that she had a fractured skull, a severely swollen brain, and that there was a brain endema or bruise present. The child was unconscious for eight days after the operation, and during that time she also had a fever which necessitated that she be packed in ice. There is testimony that these symptoms indicate damage to the lower portion of the brain.
Betty Jean stayed in the hospital two weeks, during which time she had as many as seven convulsions a day. The left side of her body was originally paralyzed, but that has diminished somewhat now. Medication was prescribed to control the convulsions, although the record shows frequent recurring convulsions to date, and testimony of the experts is that these convulsions will never be completely controlled.
Prior to the accident Betty Jean could talk, could walk, and was otherwise developing normally for a child of her age. She had never had an operation nor a serious injury, nor is there any history of convulsive disorders in her family.
The child is now about twelve years old. She is still subject to recurring convulsions, and she has an I.Q. of about 50. The medicines which she takes to control her convulsions leave her so drowsy that she has problems functioning. There remains some paralysis and weakness of the left side, causing her to walk with a spastic gait. The convulsions cause her to bite her lips and tongue and to swallow the blood and mucus from her mouth and nasal cavities, damaging the lungs and causing her high fever. These factors make it impossible for her to attend school, and in the opinion of the experts will require her to have continuous supervision and institutionalization, along with frequent medical attention and constant medication. This, in short, means that she will be unable to perform any type of work, requiring that she be supported for the rest of her life, which is expected to be shorter than the average person.
The trial judge awarded Christell Watts, without distinction, both individually and as tutrix for the minor, Betty Jean Watts, the sum of $250,000. There is no indication *738 of what factors he considered in arriving at this decision.
Under LSA-Const. Art. 7, Section 29, appellate courts in Louisiana have the jurisdictional duty to review both law and the facts. In situations involving a damage award, LSA-C.C. 1934(3) provides that much discretion must be left to the trial court. This rule is a guide which appellate courts look to in reviewing factual determinations in the area of damages. Recent decisions of the Louisiana Supreme Court have sought to further guide Courts of Appeal in this area. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Co. of Omaha, 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Walker v. Champion, 288 So.2d 44 (La.1973); Fox v. State Farm Mutual Automobile Insurance Co., 288 So.2d 42 (La.1973); Spillers v. Montgomery Ward, 294 So.2d 803 (La.1974).
Ballard is possibly the leading recent case in this area. There the court described the undertaking of an appeal court in this manner:
"On appeal, if the appellate court affirms the lower court and quantum is the issue, the court should then review all the facts and circumstances on which the lower court based the quantum of award, but this review is confined to determining whether there has been an abuse of the `much discretion' vested in the trial court in assessing damages. After a review of all the facts and circumstances, if the appellate court finds that there has been an abuse of discretion, the amount of the award should be increased or decreased as the case warrants. Strictly speaking, in the review of the damage assessment the general evidential rules of preponderance of evidence or manifest error are not pertinent and are without application, since the only question is whether the lower court has abused its discretion in assessing the damages." (Ballard, 169 So.2d p. 67)
The case goes on to say, quoting from Gaspard, supra, that:
"* * * [T]he appellate courts should consider the amount of awards in other cases only so far as they are relevant to the question of whether the judge or jury has abused its discretion in the case under consideration." (Ballard, page 67)
An appeal court is then constitutionally compelled to review the facts of each case. The trial judge should be given "much discretion", and an appellate court need look at all facts as well as similar cases to determine whether "much discretion" has been abused.
We then turn, with these factors in mind, to an evaluation of the trial court's assessment of damages.
It is obvious that Betty Jean received extremely serious injuries and that they have done her permanent damage. However, there is no way to assess her possible future loss of earnings, nor her life expectancy, with any exactness. She has no dependents to support; her medical expenses are not great under the circumstances; her medication costs between $10 and $15 a month.
In our consideration of similar cases we have considered Smolinski v. Taulli, 285 So.2d 577 (La.App.4th Cir. 1973) and the cases cited therein. These cases involve similar facts but in no instance was an award of this magnitude granted, the largest being less than one-half the one awarded here. However, each case must be evaluated under its own facts. This we have done and conclude that the award in this instance was excessive and should be reduced to $150,000.
This sum, after deduction of all legal and other expenses incurred to date, should provide a monthly income for the child in excess *739 of $500 per month for the remainder of her life without any expenditures from the principal.
This would appear to be adequate for her future needs in relation to her physical and mental condition.

6. EXEMPTION FROM COSTS
Some question is raised in regard to the indefiniteness of the judgment relating to payment of costs by a governmental body who is entitled to the benefits of L.R.S. 13:4521.
As the resolution of the legislature authorizing this suit has waived the immunity from liability, in view of the holding in Southern Construction Co. v. Housing Authority of City of Opelousas, 250 La. 569, 197 So.2d 628 (1967), and Pittman Construction Co. v. Housing Authority of New Orleans, 169 So.2d 122 (La.App.4th Cir. 1964), we are of the opinion the Town of Homer must be assessed for all costs of these proceedings and is not entitled to any exemption as provided in the trial court judgment.

DECREE
For the foregoing reasons the judgment appealed from is reversed insofar as it awards plaintiff judgment against the Claiborne Parish School Board, and it is hereby ordered that the demands of plaintiff against this defendant are hereby dismissed.
The judgment is amended to reduce the total award for damages in favor of plaintiff, Christell Watts, for the use and benefit of her minor daughter, Betty Jean Watts, from the sum of $250,000 to $150,000; the judgment is further amended to assess all costs against the defendant, Town of Homer, without recognition of the benefits ordinarily enjoyed by the provisions of L.R.S. 13:4521.
In all other respects the judgment is affirmed. Costs of this appeal are to be paid by defendant, Town of Homer.
NOTES
[*] Dennis and Ayres, JJ., took no part in denial of rehearing.