628 So.2d 1158 (1993)
Regina JEFFERSON, Individually and on Behalf of the Minor, Lucretia Louis, Plaintiffs-Appellees,
v.
Joseph N. COSTANZA, Patricia J. Miletello, and Salvadore Miletello, Jr. dba JJ's Ladies Fashions, Defendants-Appellants.
No. 25358-CA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
Rehearing Denied January 13, 1994.
*1159 Boles, Boles & Ryan by Herbert Hobgood, Monroe, for defendants-appellants.
C. Daniel Street, Monroe, for plaintiffs-appellees.
Before NORRIS, STEWART and WILLIAMS, JJ.
STEWART, Judge.
Plaintiff, Regina Jefferson, individually and on behalf of her minor daughter Lucretia Louis, sued defendants, Joseph Costanza and Patricia Miletello d/b/a JJ's Ladies Fashion, for injuries Lucretia sustained in the clothing store. The trial court rendered judgment in favor of plaintiff as natural tutrix of, and on behalf of, Lucretia. Defendants appeal. Finding no manifest error in the trial court judgment, we affirm.

FACTS
On Saturday, June 29, 1991, four year old Lucretia Louis accompanied her mother, Regina Jefferson, into JJ's Ladies Fashions on Desiard Street in downtown Monroe. After playing on the floor in the dressing room while her mother tried on clothes, Lucretia began to complain of pain in her left knee which she was unable to straighten. Ms. Jefferson and a friend, Sabrina Reed, testified that Lucretia had no problem walking or moving her knee before going into the JJ's dressing room. Ms. Jefferson said that Lucretia played on the floor on her knees in the dressing room but, when told to get up, she could not. Both Ms. Reed and Ms. Jefferson looked at Lucretia's knee but saw no blood or puncture wound. However, because Lucretia could neither straighten nor walk on her leg without pain, they carried Lucretia out of *1160 JJ's. Ms. Reed and Ms. Jefferson further testified that Lucretia was unable to walk without a limp for the rest of that evening.
Employees of JJ's testified that they did not see Lucretia go into the dressing room, and that they did not hear Lucretia cry or complain about any pain. One employee remembered Lucretia walking out of the store, not being carried out. JJ's personnel testified that the store's cleanup procedure included a thorough vacuuming in the morning and spot vacuuming sometime before closing. They testified that the dressing room had been vacuumed before Ms. Jefferson came into the store. At least two JJ's employees testified that they had seen pins on the floor of the dressing room at one time or another.
In the early hours of the next morning, June 30, 1991, Lucretia awoke in pain at approximately 2:00 or 2:30 a.m. Ms. Jefferson saw that Lucretia's knee was swollen and took her to the hospital emergency room. An X-ray revealed a pin behind her kneecap. Dr. Douglas N. Liles had Lucretia prepared for emergency surgery and removed the pin.
The following Monday, July 1, 1991, Regina Jefferson returned to JJ's, entered the same dressing room, and retrieved several pins and needles from the floor. She contacted her attorney and filed suit against defendants, alleging that Lucretia's injury was caused by defendants' negligence.
The trial court found that Lucretia was injured when her knee came into direct contact with a pin that was on the floor of the dressing room at JJ's. The trial court also found that (1) the general duty, owed by store owners to protect customers, encompasses the very risk involved in this case and (2) the defendants breached this duty by allowing pins to accumulate on the floor of their dressing room. The trial court ruled in favor of Ms. Jefferson, as natural tutrix on behalf of Lucretia, and ordered defendants to pay $4,000 in general damages, $4,264.39 in medical expenses, and court costs. Ms. Jefferson's personal claim for loss of consortium was denied. Defendants appeal.

DISCUSSION

Assignment of Error No. 1
Defendants first assert that the trial court erred in its factual finding that Lucretia was injured when her knee came into contact with a pin on the floor of the dressing room in defendants' store. We disagree.
According to defendants, the pin could not have entered Lucretia's knee in their store because the swelling and pain occurred within such a short time after she entered and left their store. Dr. Douglas N. Liles, who surgically removed the pin, testified by deposition that, after the initial discomfort of the pin's entry, there would be little pain until early infection resulted in swelling some 18 to 24 hours later. However, Lucretia was in the store shortly before its 6 p.m. closing, and awoke with pain and swelling around 2 or 2:30 a.m. the following morning, only 8 to 9 hours after the injury allegedly occurred. Although there was a pin in Lucretia's knee, defendants assert that the record does not support the trial court's finding that her knee came into contact with a pin on the floor of defendants' dressing room. We view this as a question of causation, i.e., whether Lucretia's injury was caused by the condition of defendants' store.
If the trial court findings are reasonable in light of the entire record, an appellate court may not reverse, and a fact-finder's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. Estes v. Kroger Co., 556 So.2d 240, 242-242 (La.App. 2d Cir. 1990), writ denied, 559 So.2d 1360 (La.1990); Rosell v. ESCO, 549 So.2d 840 (La.1989); State, Through DOTD v. Stobart, 617 So.2d 880 (La.1993). Causation is a fact question on which the trial judge's determination cannot be disturbed absent manifest error. See Estes, supra, 556 So.2d at 242, and cases cited therein. As this court stated in Fuller v. Wal-Mart Stores, Inc., 577 So.2d 792, 794 (La.App. 2d Cir.1991),
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate *1161 court may feel that its own evaluations and inferences are as reasonable. When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings. For only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what it said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
See also, Stobart, supra. Absent objective evidence, internal inconsistency, or documents which would cause a reasonable fact-finder not to believe a witness' story, a decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. Fuller and Rosell, both supra; Burks v. McKean, 559 So.2d 921 (La.App. 2d Cir.1990), writ denied, 566 So.2d 398 (La.1990).
The trial court heard evidence that Lucretia played and walked normally before entering JJ's, that she entered the dressing room and played on her knees on the floor where there were straight pins, that she complained of pain and could not straighten her leg before leaving JJ's, and did not straighten her leg or walk without a limp that night. It was within the purview of the trial court's function as a fact-finder to weigh this evidence along with that of Dr. Liles' testimony as to what he would expect to happen under similar, hypothetical, facts.
The trial court apparently found the weight and credibility of the evidence presented by plaintiff to preponderate in plaintiff's favor. As this court stated in Fuller, supra, such a determination is best left to the trier of fact which is in a superior position to judge the demeanor of the witnesses and this "credibility call" may only be disturbed on a showing of manifest error. The instant record discloses no such error. The trial court's factual finding that the pin entered Lucretia's knee while she was on the dressing room floor in JJ's is among the reasonable and permissible views of the evidence presented at trial. Accordingly, we find no error in this trial court determination.

Assignment of Error Nos. 2 & 3
Defendants-appellants next assert that the trial court erred in its application of an inappropriate evidentiary standard in determining that the defendants failed to exculpate themselves from liability. According to defendants, the trial court's interpretation, application, and resolution of appellants' evidentiary burden was erroneous. Defendants urge this court to "broadly construe" LSA-R.S. 9:2800.6(B) as the burden of proof applicable to the instant issue. Defendants argue that under this statute, this court should find that (1) plaintiff failed to establish that defendants either created or had actual or constructive knowledge that the pin was on the dressing room floor, and (2) plaintiff demonstrated no failure to exercise reasonable care.
By its language, R.S. 9:2800.6 applies only to cases which result from a fall, and does not affect other bases for a merchant's liability. The instant case does not arise from a fall. Defendants cite, and we have found, no statutory or jurisprudential support for use of this statute's burden of proof in the instant situation. This argument has no merit.
In the alternative, defendants argue that, if they bore the burden of proving that their employees did not leave the pin on the floor, they presented sufficient evidence to satisfy this burden. They assert that, because the dressing room area was cleaned only a short time before plaintiffs' arrival, defendants should be exonerated from liability.
In Wilson v. State Department of Public Safety and Corrections, 576 So.2d 490, 493 (La.1991), the Louisiana Supreme Court stated that,
[a]s a general proposition,
[t]he determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty *1162 element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of the liability or scope of protection element); and (5) proof of actual damages (the damages element). The first element is usually a judge question, and the other four are usually jury questions unless reasonable minds could not differ.

Fowler v. Roberts, 556 So.2d 1, 4-5 (La. 1989) (citation omitted).
An owner of a business who permits the public to enter his establishment has a duty to exercise reasonable care to protect those who do enter. This duty extends to keeping the premises safe from unreasonable risks of harm or warning persons of known dangers. Bordelon v. Pelican State Mutual Insurance Company, 599 So.2d 511, 513 (La.App. 3d Cir.1992); Rodriguez v. New Orleans Public Serv., Inc., 400 So.2d 884 (La.1981). When the presence of young children is expected, the duty increases. Bordelon, supra; Watts v. Town of Homer, 301 So.2d 729 (La.App. 2d Cir.1974), writ denied, 305 So.2d 130 (La. 1974).
As this court stated in Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946, 948-949 (La.App. 2d Cir.1991), writ denied, 580 So.2d 923 (La. 1991) (citations omitted):
Shoppers must accept certain realities and a storeowner is not an insurer against all possibilities of an accident on his premise. A store owner must act reasonably in view of the probability of injury to others and owes an affirmative duty to those who use his premises to exercise reasonable care to keep the premises in a safe condition. A customer has a protected interest in expecting premises to be free of hazardous conditions.
Thus, the property owner's duty is to act reasonably in view of the probability of injuries; he is not the insurer of his premises. Whether there was a condition on the property which created an unreasonable risk of harm is a legal question. Bradford v. Louisiana Downs, Inc., 606 So.2d 1370, 1375 (La.App. 2d Cir.1992) (citations omitted).
Citing Ardoin v. United States Fidelity & Guaranty Co., 205 So.2d 610 (La. App. 3d Cir.1967), defendants challenge the trial court's conclusion that the straight pin on the floor posed an unreasonable risk of harm to store patrons. They assert that, under Ardoin, the mere presence of the straight pins on the floor does not create an unreasonable risk of foreseeable harm to customers.
We agree with the Ardoin court that the mere presence of straight pins on the floor is not a hazardous condition. However, we find distinguishable the facts in Ardoin. Plaintiff there was standing by a counter when she noticed that the pin was in her ankle all the way to its head. The Ardoin court observed that the evidence failed to show where the pin came from, how long it had been there, who put it there, or how it entered plaintiff's ankle. The court found that there were no facts or circumstances to indicate that the Ardoin storekeeper was negligent.
By contrast, the instant record includes evidence that Lucretia was on the floor of the dressing room, on her knees. It was foreseeable that a customer's small child would enter a dressing room and play, kneeling, on the floor. Employees testified that the store was vacuumed twice daily: a complete vacuuming in the morning, and "spot" vacuuming before closing. The late afternoon vacuuming had been done before Lucretia entered the dressing room with her mother. Employees also testified that, on occasion, they had observed straight pins on the floor of the dressing room. There was no testimony that the vacuum cleaner picked up pins. Ms. Jefferson collected pins from the dressing room floor on the following Monday afternoon, sometime after the scheduled morning vacuuming.
While the presence of pins on the floor of a clothing store cannot be said to be per se *1163 defective to reasonably prudent persons of suitable age and discretion, such a conclusion is not applicable to children of tender years. See and compare, Bordelon, supra, 599 So.2d at 513. Under circumstances such as in Ardoin, the damage sustained is not within the scope of the duty. By contrast, the instant defendants' duty to keep the dressing room floor free of unreasonably dangerous objects encompasses the risk that a young child who accompanies her mother into a dressing room, will play on the floor and be injured by pins thereon. This record supports the trial court conclusion that the presence of pins on the dressing room floor renders the floor unreasonably dangerous. For these reasons, we find no error in the trial court's conclusion that the pins on the floor in the dressing room posed an unreasonable risk of harm.
Taking into consideration the cleanup procedures employed by the defendants, and the presence of straight pins on the dressing room floor despite the frequency of vacuuming, we cannot conclude that the defendants' inspection and cleanup procedures were so adequate as to necessitate reversal of the trial court judgment.
Defendants' employees stated they had seen and/or picked up straight pins from the floor of the dressing room from time to time. There was no testimony which refuted the evidence presented by plaintiffs about the presence of pins on the floor. Defendants' witnesses testified that they did not observe Lucretia in the dressing room. They further testified that they were unaware that Lucretia went into the dressing room or was in any pain while she was in JJ's. One witness testified that she remembered Lucretia left walking and did not remember her being carried out. Other than this contradiction, plaintiff's evidence was unrefuted. Although there was testimony that defendants' employees did not observe certain facts to which plaintiff testified, there was no testimony which contradicted plaintiff's testimony about the presence of the pins or about Lucretia's activities in the dressing room.
On this record, we cannot say that there was no evidence of negligence on the part of the instant merchants. The condition of the dressing room floor was one from which the instant harm could reasonably be anticipated. Although defendants are not the insurer of the premises, we find no error in the trial court conclusion that Lucretia's injury was caused by the breach of defendants' duty to keep their property in a reasonably safe condition.

CONCLUSION
In the instant case, the plaintiff was required to establish that (1) the presence of pins on the floor of the dressing room was a cause in fact of the accident, (2) defendants owned and/or had custody of the store and owed a legal duty which encompassed the particular risk to which Lucretia was exposed, (3) defendant breached that duty by allowing pins to accumulate on the floor, and (4) damages resulted. See and compare, Bradford, supra, 606 So.2d at 1374-1375. Only the causation, duty and breach thereof are at issue on appeal. We find no error in the trial court's legal determination that defendants owed a duty to Lucretia to keep the premises free of the unreasonably dangerous accumulation of pins on the dressing room floor. Defendants knew or should have known of the risk that a young child would play on the dressing room floor and be injured by the pins. The defendants' duty to protect customers encompasses the risk involved in this case. Under the instant circumstances, it was reasonable for the trial court to conclude that, by allowing pins to accumulate on the floor of their dressing room, defendants breached their duty to protect customers.
For the foregoing reasons, we affirm the trial court judgment. Costs are assessed against the defendants-appellants.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, BROWN, STEWART, and WILLIAMS, JJ.
Rehearing denied.