LAMAR CONTRACTORS, LLC

VERSUS

SRF GROUP CONSULTING, LLC

NO. 22-CA-213

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 36,600, DIVISION "E"
HONORABLE ALVIN TURNER, JR., JUDGE PRESIDING

February 01, 2023

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and John J. Molaison, Jr.

**REVERSED; REMANDED**

    **JJM**
    **RAC**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
ST. JAMES PARISH
    Victor J. Franckiewicz, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
TRAVELER'S CASUALTY AND SURETY COMPANY OF AMERICA
    Elliot W. Scharfenberg
    Audrey Martin

**MOLAISON, J.**

The appellant, St. James Parish, seeks review of the trial court's judgment which granted the appellee, Travelers Casualty And Surety Company Of America's, exception of peremption. For the reasons that follow, we reverse.

**FACTS AND PROCEDURAL HISTORY**

The basis of the underlying lawsuit pertains to the construction of a public building ("the building") known as the St. James Parish District 5 Multi-Purpose Recreation Building Welcome Park, which is owned by, and located within, St. James Parish ("the Parish"). On July 30, 2013, the Parish entered into a written contract with Lamar Contractors, L.L.C. ("Lamar") to serve as the general contractor and to construct the building, which was designed by SRF Group Consulting, LLC ("SRF"). Travelers Casualty And Surety Company Of America ("Travelers") furnished a performance bond on July 30, 2013, naming the Parish as obligee and Lamar as principal. Following a dispute over the design and specifications for the roof decking, Lamar stopped work on the project. On July 15, 2015, pursuant to the general contract between the parties, Lamar filed a "Notice of Termination." Lamar then filed the underlying lawsuit, which later named the Parish in an amended petition. The Parish filed a reconventional demand against Lamar on January 19, 2016, alleging that Lamar's work was defective, and that Lamar had breached the general contract in unilaterally deciding to stop work on the building. On June 18, 2021, the Parish amended its answer and reconventional demand to assert a third-party demand against Travelers.

On September 27, 2021, Travelers filed an Exception of Peremption which argued that the Parish's claim against it was untimely pursuant to La. R.S. 38:2189, as it was brought more than five years after Lamar had allegedly been placed in default of the construction contract. On February 7, 2022, a hearing on Travelers'

exception was held and, in a judgment dated February 21, 2022, the trial court granted the exception of peremption. This appeal followed.

## ASSIGNMENT OF ERROR

In its sole assignment of error, St. James Parish argues that the district court committed legal error when it misapplied La. R.S. 38:2189 and granted Travelers' peremptory exception.

## LAW AND ANALYSIS

Peremptive statutes are to be strictly construed against peremption and in favor of maintaining the claim. *Rando v. Anco Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065, 1083. Of the possible constructions of a peremptive statute, the one that maintains the claim rather than the one that bars prosecution of the claim should be adopted. *Id.* A party who raises an exception of peremption ordinarily bears the burden of proof at trial on the exception. *Schonekas, Winsberg, Evans & McGoey, L.L.C. v. Cashman*, 11-449 (La. App. 5 Cir. 12/28/11), 83 So.3d 154, 158. However, when peremption is evident on the face of the petition, the burden is on the plaintiff to prove that his action is not perempted. *Id.*

A judgment granting an exception of peremption is generally reviewed *de novo*, because the exception raises a legal question and involves the interpretation of a statute. *Scott v. Zaheri*, 14-0726 (La. App. 4 Cir. 12/3/14), 157 So.3d 779, 785. If evidence is introduced at the hearing on an exception of peremption, the trial court's findings of fact are evaluated under the manifest error standard of review. *Schonekas, Winsberg, Evans & McGoey, L.L.C. v. Cashman*, *supra*. If the trial court's findings are reasonable in light of the record viewed in its entirety, an appellate court may not reverse, even if it is convinced that it would have weighed the evidence differently. *Id.*

### *Evidence introduced at the hearing*

The minute entry of October 7, 2021, indicates that the Parish offered, filed and introduced the following exhibits that were in its memorandum: a copy of Title 38, Chapter 10 of the "Louisiana Revised Statutes of 1950," and; a "Notice of Default of Building Contract" dated December 6, 1994, between the State of Louisiana and a contractor, unrelated to this case. Travelers offered, filed and introduced Exhibits "A-E" attached to its brief; the Parish's answer to the amended and supplemental petition for damages; the Parish's amended answer and third party demand against Travelers; a copy of the performance bond between Lamar, the Parish, and Travelers; an email dated January 19, 2015 from the Parish's counsel indicating that the Parish's answer to Lamar's petition would be filed that day, and; the General conditions of the Contract for Construction between the Parish and Lamar.

### *Traveler's performance bond*

In public works contracts exceeding $25,000, the Louisiana Public Works Act generally requires contractors to furnish two bonds: a performance bond and a payment bond. *See,* La. R.S. 38:2216; La. R.S. 38:2241.3. The performance bond must be furnished in all public works contracts "for the faithful performance of [the contractor's] duties." La. R.S. 38:2216(A)(1). This bond "exists for the benefit of the public authority and in essence creates a 'privilege' or a source of funds available to the State should it be successful in a suit against the general contractor and the surety under La. R.S. 38:2189." *Apex Bldg. Techs. Grp., Inc. v. Catco Gen. Contractors, L.L.C.*, 15-729 (La. App. 5 Cir. 3/30/16), 189 So.3d 1209, 1212-13.

In the instant case, section one of the performance bond states that Travelers and Lamar share joint and several liability for performance of the construction contract. Section three of the bond specifies a procedure for notification of Lamar's

default to Travelers, after which Traveler's obligation under the bond "shall arise." Following the notification procedure of Lamar's default, Travelers' obligation then becomes one of several options under Section five of the performance bond, which include: arranging for Lamar to complete the construction contract (Section 5.1), completion of construction through an independent contractor (Section 5.2) or, to determine the amount of Traveler's liability and pay that amount to the Parish (Section 5.4).

***La. R.S. 38:2189, the Public Works Act***

La. R.S. 38:2189 provides:

> Any action against the contractor on the contract or on the bond, or against the contractor or the surety or both on the bond furnished by the contractor, all in connection with the construction, alteration, or repair of any public works let by the state or any of its agencies, boards or subdivisions shall prescribe 5 years from the substantial completion, as defined in R.S. 38:2241.1, or acceptance of such work, whichever occurs first, or of notice of default of the contractor unless otherwise limited in this Chapter.

As argued by Travelers, the resolution of whether the Parish's claim against it is perempted is based on the third condition listed as a prerequisite to action against the surety, the "notice of default of the contractor." Travelers asserts that the Parish gave notice of Lamar's default when it filed its reconventional demand on January 9, 2016. Travelers concludes that, contrary to the five-year limitation set forth in La. R.S. 38:2189, the Parish's claim against it was not brought until June 18, 2021. Conversely, the Parish argues that the five-year time limitation never began to run because it had never provided formal notice of Lamar's default.[1]

***The three triggers of peremption under La. R.S. 38:2189***

---

[1] In the alternative, the Parish contends that its January 2016 reconventional demand against Lamar preserved the Parish's claims against Travelers, and that its June 2021 amended pleading, which brought the third-party demand against Travelers, relates back to its January 2016 reconventional demand against Lamar. Because we resolve this appeal based upon the Parish's primary argument, we pretermit any discussion of its alternative arguments.

As seen above, La. R.S. 38:2189 identifies three events that begin the peremption period: substantial completion, acceptance of such work, or notice of default of the contractor. Both "substantial completion" and "acceptance" are terms defined in 38:2241.1, as follows:

> A. When any public entity enters into a written contract for the construction, alteration, or repair of any public works, in accordance with the provisions of R.S. 38:2241, the official representative of the public entity shall have recorded in the office of the recorder of mortgages, in the parish where the work has been done, an acceptance of such work or of any specified area of such work, not later than thirty calendar days after the date of completion or substantial completion of such work.

> B. "Substantial completion" is defined for the purpose of this Chapter, as the finishing of construction, in accordance with the contract documents as modified by any change orders agreed to by the parties, to the extent that the public entity can use or occupy the public works or use or occupy the specified area of the public works for the use for which it was intended. The recordation of an acceptance in accordance with the provisions of this Section upon substantial completion shall be effective as an acceptance for all purposes under this Chapter.

> C. Any public entity that does not file for recordation an acceptance of public work shall require the contractor to have recorded in the office of the recorder of mortgages, in the parish where the work has been done, an acceptance of such work or of any specified area of such work, not later than forty-five calendar days after the date of completion or substantial completion of the work.

Thus, no requirements for the form of the contactor's notice of default, nor specification on how the notice should be served and recorded, is provided for under the statute. The Parish asserts, however, that prior reported cases on similar issues demonstrate that the notice of default must be placed into the public record. *See, Bd. of Sup'rs of Louisiana State Univ. v. Louisiana Agr. Fin. Auth.*, 07-0107 (La. App. 1 Cir. 2/8/08), 984 So.2d 72, 76.

In the instant case, Lamar filed a notice of termination of the contract and brought suit against the Parish. The limited record before us suggests that, after Lamar had filed suit, the parties were working toward a resolution of claims which included resuming work on the project. On this basis, it appears that trial on the matter was continued at least once. There is no evidence which demonstrates that the Parish considered Lamar to be in default of the contract prior to the reconventional demand, or that it formally declared Lamar's default in any manner. Even the Parish's reconventional demand against Lamar itself does not allege "default," but instead pleads causes of action pursuant to a breach of contract. As stated in the reconventional demand:

> 36. ***Lamar breached its contract*** for the Project by performing defective work . . .
> 37. ***Lamar further breached its contract*** with the Parish by unilaterally stopping work and walking off the job. . .

(Emphasis added.)

In *O & M Const., Inc. v. State, Div. of Admin.*, 576 So.2d 1030, 1037 (La. Ct. App.), *writ denied*, 581 So.2d 691 (La. 1991), in which a public contractor brought suit against state seeking damages and the balance withheld on public building contract, the court acknowledged a distinction between a contractor's passive breach of contract and placing a contractor "in default":

> A contractor's failure to complete a building contract within the time specified in the contract constitutes a passive breach, and a putting in default is a condition precedent to the recovery of liquidated damages for the contractor's delay in completion unless (1) by the terms of the contract a putting in default is waived, (2) by stipulation in the contract or by the nature and circumstances of the agreement time is of the essence thereof, or (3) a putting in default is excused by some act of the obligor which would render it a vain and useless thing.

### The performance bond's requirements for the "contractor's default"

While La. R.S. 38:2241.1 is silent on the requirements of what constitutes a valid and actionable contractor's default, this issue is squarely addressed in the

July 30, 2013 performance bond between Travelers, Lamar, and the Parish. First, Section 14.3 of the performance bond defines "contractor's default" as the "[f]ailure of the Contractor, **which has not been remedied or waived**, to perform or to otherwise comply with a material term of the Construction Contract." [Emphasis added.] Here, Lamar unilaterally terminated the construction contract and stopped work on the project, obviously a condition that has not been remedied. Nor has the Parish specifically waived its rights against Lamar, and by extension, Travelers' obligations to a remedy guaranteed by the performance bond. Thus, under the facts presented, the contractual definition of "contractor's default" has been met.

Under section 3 of the performance bond, three requirements were required to be met in order for Lamar to be put in default and for Travelers obligation under the bond to arise, if "there is no Owner default under the Construction Contract," which applies in this case. In summary, the Parish needed to: 1) provide notice to both Lamar and Travelers that it "is considering declaring a Contractor Default," which in turn gives Travelers the option to request a conference to discuss possible terms of settlement; 2) the Parish is required to "declare a Contractor Default," "terminate the Construction Contract," and notify the surety, and; 3) pay the balance of the "Contract Price" either to Travelers or "to a contractor selected to perform the Construction Contract."

Contracts have the effect of law upon the parties, and the courts are bound to give legal effect to all contracts according to the common intent of the parties. This intent is determined by the words of the contract when they are clear and explicit and lead to no absurd consequences. *O & M Construction, Inc. v. State, Division of Administration*, *supra.* The record before us does not show that the Parish has complied with any of these contractual requirements to place Lamar in default.

Because the bond details the very specific procedure for placing Lamar in default and triggering Travelers obligations, and that procedure was not followed, we do not find that a simple allegation of a breach of contract in the Parish's reconventional demand is sufficient to start the five-year peremptive period of La. R.S. 38:2189.[2] Conversely, if as Travelers argues, the Parish had placed Lamar in default of the construction contract as required by the security bond, then Travelers would have been required to fulfill its obligations under the bond by way of one of the pre-determined remedies available. There is no evidence to demonstrate that Travelers has done so.

We are mindful of the legislature's intended public policy, as acknowledged by other courts, regarding the peremptive period of La. R.S. 38:2189. As explained by the supreme court in *State Through Div. of Admin. v. McInnis Bros. Const.*, 97-0742 (La. 10/21/97), 701 So.2d 937, 946:

> A conclusion that La. R.S. 38:2189 is prescriptive, and thus susceptible of suspension, interruption and renunciation, abolishes the statute's clearly stated time limitation and substitutes for it an unknown date potentially very far in the future, thereby preventing the surety, from whom the general contractor must obtain a performance bond in order to contract with the State, from ever accurately calculating to any degree the length of its possible exposure under the statutory bond. It is self-evident that providing a certain time period for which the surety will be exposed to liability on the bond as well as reducing the length of exposure from up to 19 years under La. C.C. arts. 2762 and 3500 to 5 years under La. R.S. 38:2189 will result in reducing the cost of the bond, the contractor's bond expense, and thus the price paid by the State for the construction of the public work. An obvious purpose of public contract laws is to advance the interest of the taxpaying citizens of this state. *Haughton Elevator Division v. State*, 367 So.2d 1161, 1164 (La.1979).

---

[2] In *S. Const. Co. v. Hous. Auth. of City of Opelousas*, 250 La. 569, 582, 197 So.2d 628, 633 (1967), the Louisiana Supreme Court rejected an argument that extraneous circumstances in a case "obviated the necessity" of formally putting a party to a public works contract in default. *In Roy Anderson Corp. v. 225 Baronne Complex, L.L.C.*, 18-0962 (La. App. 4 Cir. 9/25/19), 280 So.3d 730, 744, which involved a performance bond for a private construction contract, the Court rejected an argument that being in default as a matter of law dispensed the requirement that formal notice of default be given before the surety's obligations are triggered.

Under the facts presented, we do not find this to be an instance where Travelers has been, or will be exposed to liability on the performance bond for an indeterminate amount of time. According to La. R.S. 38:2189 and the plain language contained in the bond itself, we cannot say after a *de novo* review of the record that Lamar was put into default sufficient to trigger the five-year peremptive period.

## CONCLUSION

For the foregoing reasons, the trial court's judgment granting Traveler's exception of peremption is reversed. This matter is remanded for further proceedings consistent with this opinion.

**REVERSED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-213

### E-NOTIFIED
23RD JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ALVIN TURNER, JR. (DISTRICT JUDGE)
STEVEN B. LOEB (APPELLEE)
ELLIOT W. SCHARFENBERG (APPELLEE)

VICTOR J. FRANCKIEWICZ, JR.
(APPELLANT)

AUDREY MARTIN (APPELLEE)

### MAILED
DARREN A. PATIN (APPELLEE)
ATTORNEY AT LAW
3445 NORTH CAUSEWAY BOULEVARD
SUITE 800
METAIRIE, LA 70002

KEITH J. BERGERON (APPELLEE)
TERRENCE L. BRENNAN (APPELLEE)
ATTORNEYS AT LAW
755 MAGAZINE STREET
NEW ORLEANS, LA 70130

JACOB E. ROUSSEL (APPELLEE)
ATTORNEY AT LAW
POST OFFICE BOX 3197
BATON ROUGE, LA 70821